[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 18-11900
_____

D.C. Docket No. 6:17-cr-00165-PGB-KRS-1


UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

JEREMY ACHEY,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

(November 21, 2019)

Before WILLIAM PRYOR and JILL PRYOR, Circuit Judges, and ROBRENO,[*]
District Judge.

_____

[*] Honorable Eduardo C. Robreno, United States District Judge for the Eastern District of
Pennsylvania, sitting by designation.

ROBRENO, District Judge:

Achey appeals his conviction for conspiracy to distribute a controlled substance, arguing that there was insufficient evidence to prove the existence of a conspiracy. This argument depends on a contention that the government was required to prove Achey conspired to distribute a specific controlled substance and at trial it only proved that Achey distributed a generic controlled substance. We disagree and hold that the government was only required to prove Achey conspired to distribute a generic controlled substance and that there was sufficient evidence to prove that multiple people conspired with Achey to distribute a generic controlled substance. We affirm.

## I.    BACKGROUND

Achey sold controlled substances on the dark web under the name EtiKing. On February 27, 2017, one of Achey's customers died from an overdose involving an "analogue" of fentanyl, tetrahydrofuran fentanyl ("fentanyl"). The victim had acquired the drug that caused her death from EtiKing on the dark web. Following an investigation that included an undercover agent posing as a customer of EtiKing's, Achey was arrested and charged with one count of conspiracy to distribute and possess with intent to distribute a controlled substance analogue[1]

---

[1] We note that the indictment charged Achey with a conspiracy to distribute or possess with intent to distribute a generic controlled substance analogue, not a generic controlled substance. We assume for purposes of this appeal that the mens rea requirement to prove a conspiracy for a

2

and two counts of distributing a controlled substance analogue.  The jury ultimately returned a conviction on all counts and determined that Achey had sold the drug that caused the victim's death.[2]

The investigation revealed that various actors were involved in Achey's drug operation.  Achey purchased at least two types of fentanyl—methe fentanyl and tetrahydrofuran fentanyl—from "LS," a company based in China.  Specifically, he bought 50 grams of tetrahydrofuran fentanyl from LS.  Others involved in the conspiracy included Achey's wife, who delivered parcels of drugs to various post offices; a reseller of drugs, named "illianlikeavillian," who sold smaller quantities of some of the drugs Achey sold him; and some repackagers who helped Achey ship out orders to customers.

Achey only challenges his conviction for conspiracy under Count One of the indictment.  Count One charged:

> [Defendant] did knowingly, willfully, and intentionally conspire with other persons, both known and unknown to the Grand Jury, to distribute and possess with intent to distribute a controlled substance analogue that was intended for human consumption,

---

generic controlled substance analogue is the same as for a conspiracy for a generic controlled substance.  We make this assumption because Achey has not argued that the two crimes have different mens rea requirements, and there is no dispute in this case that the substances Achey conspired to distribute or possess with intent to distribute qualified as controlled substance analogues.

[2] Achey was sentenced to life imprisonment, consisting of a term of life imprisonment on Count One, a term of life imprisonment on Count Two, and a term of 240 months' imprisonment on Count Three, to be served concurrently.

3

which violation involved a mixture and substance containing a detectable amount of . . . (Tetrahydrofuran fentanyl) Hydrochloride, a Schedule II controlled substance analogue, and a mixture and substance containing a detectable amount of . . . (4-ACO-DMT), a Schedule I controlled substance analogue, and is therefore punished under 21 U.S.C. § 84l(b)(l)(C).

Pursuant to 21 U.S.C. § 84l(b)(l)(C), on or about February 27, 2017, a person identified herein as "K.G." died as a result of the use of a controlled substance analogue that the defendant conspired to distribute and possess with intent to distribute, that is, a mixture and substance containing a detectable amount of . . . (Tetrahydrofuran fentanyl) Hydrochloride, a Schedule II controlled substance analogue.

All in violation of 21 U.S.C. §§ 802(32), 813, and 846.

Achey challenges the sufficiency of the evidence to prove Count One on the basis that the government was required to prove that he conspired to distribute fentanyl or DMT, and it failed to prove a conspiracy as to the specific drug.

## II.    STANDARD OF REVIEW

When reviewing a challenge to the sufficiency of the evidence, the evidence must be considered "in the light most favorable to the Government, drawing all reasonable inferences and credibility choices in the Government's favor." *United States v. Browne*, 505 F.3d 1229, 1253 (11th Cir. 2007). "If a

4

reasonable jury could conclude that the evidence establishes guilt beyond a reasonable doubt," the verdict will be affirmed. *Id.*[3]

## III.   DISCUSSION

There was sufficient evidence to prove a conspiracy to distribute a controlled substance because Achey and at least one other person engaged in conduct from which an agreement to commit an illegal act can be inferred.  The government was only required to prove a conspiracy to distribute a generic controlled substance because the indictment charged a conspiracy to distribute a controlled substance and not a conspiracy to distribute fentanyl or DMT. And in the light most favorable to the government, a reasonable jury could have found that Achey and at least one other person conspired to distribute a generic controlled substance.

> A.   *The Government Was Required To Prove A Conspiracy To Distribute A Controlled Substance In General.*

To convict Achey on Count One, the government was required to prove that he conspired to distribute a generic controlled substance.  Achey argues otherwise, contending that here the indictment charged him with conspiracy to

---

[3] The parties dispute whether the specific sufficiency of the evidence argument raised on appeal was made below.  If an argument regarding the sufficiency of the evidence is not made below, and it is raised for the first time on appeal, we will apply plain error review to that argument on appeal. *United States v. Joseph*, 709 F.3d 1082, 1103 (11th Cir. 2013).  Because the application of plain error review here does not change the outcome of the case, we need not decide this issue.

distribute fentanyl or DMT specifically and that therefore the government was required to prove there was an agreement to distribute fentanyl or DMT.

This argument fails.  Achey misses an important distinction: proof of the type of drug involved in the conspiracy is separate and distinct from proof of mens rea as to the type of drug.  The statutes under which Achey was indicted do not require proof of a conspiracy to distribute a specific controlled substance.  A reference in the indictment to a specific controlled substance does not necessarily put the government to the burden of proving a conspiracy to distribute the specific controlled substance.  And the government does not have the burden to prove a conspiracy to distribute the specific controlled substance when the reference to the specific controlled substance is fairly read to apply to the sentencing enhancement provision of the statute and not to the elements of the offense.

We turn to the interplay of the three relevant statutory provisions.  21 U.S.C. § 841(a)(1) makes it a crime for a person to intentionally or knowingly "manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense, *a* controlled substance." *Id.* (emphasis added).  In turn, 21 U.S.C. § 846 makes it a crime to conspire to violate § 841(a)(1).  Further, 21

U.S.C. § 841(b) provides the penalties for a violation of either §§ 841(a)(1) or 846, and some of these penalties are based on the specific type of drug involved.

Both §§ 841(a)(1) and 846—the statutes defining the elements of the crime of conspiracy to distribute a controlled substance—only require the government to prove that the defendant conspired to distribute what he knew was a controlled substance. The specific type of drug involved is not an element of § 841(a) but is instead "relevant only for sentencing purposes." *United States v. Rutherford*, 175 F.3d 899, 906 (11th Cir. 1999).[4] And, because the type of drug is not an element of the statutory offense, a finding of mens rea with respect to the specific type of drug is ordinarily not required. *United States v. Sanders*, 668 F.3d 1298, 1309–10 (11th Cir. 2012).[5] It follows that, for a § 846 conspiracy charge, the government is ordinarily not required to prove that the defendant conspired to distribute a specific substance but is only required to prove that the defendant

---

[4] *See* 21 U.S.C. § 841(a)(1) (using the indefinite language of "a controlled substance"); *McFadden v. United States*, 135 S. Ct. 2298, 2304 (2015) ("When used as an indefinite article, 'a' means '[s]ome undetermined or unspecified particular.'" (alteration in original) (quoting Webster's New International Dictionary 1 (2d ed. 1954))); *United States v. Martinez*, 301 F.3d 860, 865 (7th Cir. 2002) ("In reading § 841, it is clear that drug type and quantity are not elements of the offense.").

[5] *See McFadden*, 135 S. Ct. at 2304 ("The ordinary meaning of § 841(a)(1) thus requires a defendant to know only that the substance he is dealing with is some unspecified substance listed on the federal drug schedules."). But the government may be required to prove the specific type of drug involved for sentencing. *See Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000) (holding that any fact that increases the maximum penalty must be found by the jury); *see also* 21 U.S.C. § 841(b)(1) (providing for increased maximum penalties based on the type and amount of drug involved). The instant case only involves the mens rea question, i.e. whether the government is required to prove the defendant conspired to distribute what he knew was a specific drug. *Cf. Sanders*, 668 F.3d at 1309–10 (discussing both the *Apprendi* issue and the mens rea issue).

conspired to distribute a generic controlled substance. *See United States v. Abdulle*, 564 F.3d 119, 126 (2d Cir. 2009) ("[T]he mens rea requirement for conspiracy is satisfied simply if the government shows that the defendant intended to distribute and possess with the intent to distribute *any* controlled substance.").

A different situation arises if the indictment charges a specific type of drug in the place of the generic drug element of the offense. *United States v. Narog*, 372 F.3d 1243, 1246, 1249 (11th Cir. 2004). Accordingly, an indictment that charges a subset [6] of the statutory conspiracy offense, e.g. charging the specific type of drug for the controlled substance element, requires the government to prove that the defendant conspired to distribute the specific type of drug charged. *See id.* at 1249 (holding that the government was required to prove that the defendants conspired to distribute the specific drug referenced in the indictment because the indictment charged a subset of the statutory offense). The question here is whether

_____

[6] A subset of a statutory offense is an offense for which all the elements of that subset offense are included within the elements required to prove the statutory offense. *See Schmuck v. United States*, 489 U.S. 705, 716 (1989) (noting that a lesser offense is not a subset of a greater offense "[w]here the lesser offense requires an element not required for the greater offense"); *see also Subset*, Webster's Ninth New Collegiate Dictionary (1990) (defining subset as "a set each of whose elements is an element of an inclusive set"). Thus, distribution of fentanyl is a subset of the statutory offense of distribution of a controlled substance because all the elements necessary to prove the former are elements of the latter. Indeed, the only difference between these two crimes is that the statutory-offense element requiring knowledge that a controlled substance is being distributed is narrowed for the subset offense to knowledge that fentanyl is being distributed. *See Sanders*, 668 F.3d at 1311 ("Although knowledge is not required under § 841(b), Sanders argues that his particular indictment narrowly charges only a 'subset' of the statutory offenses—conspiracy to possess and possession of cocaine—rather than the generic crimes of conspiracy to possess and possession of a controlled substance.").

the indictment charged a subset of the statutory offense by referencing a specific drug.

Achey argues that Count One, by referencing the specific drugs, charges a subset of the offense, as opposed to the generic statutory crime of conspiring to distribute controlled substances. He relies on *Narog*, where this Court held that an indictment charged a subset of the offense when it charged that the defendant distributed pseudoephedrine "knowing and having reasonable cause to believe that [it] would be used to manufacture a controlled substance, that is, methamphetamine." 372 F.3d at 1246. *Narog* teaches that when an indictment "contains *both* the broad language of the statutory crime and additional language seemingly narrowing the charged crime to a subset of the statutory crime," the government is required to prove the subset of the crime. *Id.* at 1248–49. In *Narog*, the indictment charged that the defendants knew that the substance they were distributing—which was not itself a controlled substance but was an ingredient necessary to manufacture a controlled substance—would eventually be used to manufacture a specific controlled substance. *Id.* at 1246. Under those circumstances, because the indictment charged a specific substance instead of the generic substance as an element, the government was required to prove mens rea as to the specific substance. *Id.* at 1249.

9

But this Court subsequently explained in *Sanders* that a reference to a specific substance in the indictment does *not* necessarily require the government to prove mens rea as to the specific substance. 668 F.3d at 1309–10. The *Sanders* indictment charged that "[the defendant conspired] to knowingly and intentionally distribute and possess with intent to distribute a controlled substance, said conspiracy involving at least five (5) kilograms of cocaine." *Id.* at 1311. Because the indictment in *Sanders* conveyed that the conspiracy "involved" the specific drug, this reference pertained to sentencing, and the indictment charged that the defendants knew they were distributing a generic controlled substance and not a subset of the offense. *Id.* at 1312–13. That indictment did not substitute the specific substance for the generic substance as an element. *Id.* Thus, the government was not required to prove mens rea as to the specific substance. *Id.*

Under *Sanders* and *Narog*, whether the government is required to prove a conspiracy to distribute a specific substance depends on the role the specific substance plays in the indictment. If the reference to the specific substance in the indictment, fairly read, charges that the defendant conspired to violate § 841 with the specific substance as an element, then a subset of the offense is charged, and the government must prove the defendant's mens rea regarding the

10

specific substance.[7]  But if the specific substance is referenced only for sentencing purposes, the government is not required to prove the defendant's mens rea regarding the specific substance, and proof of the defendant's mens rea regarding generic controlled substances will suffice.

The indictment in this case does not charge a subset of the offense. The references in the indictment to fentanyl and DMT are not fairly read as charging Achey with conspiring to distribute those specific drugs.  Instead, the references to the specific drugs in the indictment are fairly read to have been included for sentencing purposes.[8]  To wit, the first reference to the specific substances in this indictment has the same "involving" language as the reference to the specific substance in the *Sanders* indictment—indicating that it is included only for sentencing purposes.  The second reference follows an explicit reference to 21 U.S.C. § 84l(b)(l)(C), which is the sentencing provision, not the elements-of-the-offense provision.  Looking at these circumstances, Achey's indictment is fairly

---

[7] *Compare Sanders*, 668 F.3d at 1312 ("[The] indictment fairly read is not charging that Sanders had *knowledge* of that type or amount of drug but is charging that the overall conspiracy involved that type and amount of drug."), *with Narog*, 372 F.3d at 1247 ("[T]he grand jury charged this case as a methamphetamine case, and the government tried it as such. There was simply nothing else involved. The defendants were accused of collecting large amounts of pseudoephedrine and shipping it to a lab where it would be used to manufacture methamphetamine.").

[8] In *Sanders*, the specific drug language was required under § 841(b) to fix the statutory maximum sentence.  668 F.3d at 1309–10.  Here, although proof of the specific type of drug ultimately may not have been required for sentencing because § 841(b)(1)(C) provides the punishment for conspiring to distribute a schedule I or II controlled substance, neither the district court nor the parties focused on this distinction.

read as charging conspiracy to distribute a generic controlled substance, as in

*Sanders*, and only noting the specific substances involved for sentencing

purposes.[9]

### B.    There Was Sufficient Evidence To Prove A Conspiracy To Distribute A Controlled Substance.

When all reasonable inferences are drawn in the government's favor,

the evidence adduced at trial was sufficient to prove the existence of a conspiracy

to distribute a controlled substance.  There was sufficient evidence in the record for

the jury to infer that (1) the supplier conspired with Achey based on the amount of

drugs supplied, (2) the reseller conspired with Achey based on his distribution of

Achey's drugs, (3) the wife conspired with Achey based on her assistance, and (4)

the repackagers conspired with Achey based on their assistance.

A conspiracy conviction requires the government to prove the

following: "(1) [an] agreement between two or more persons to achieve an

unlawful objective; (2) knowing and voluntary participation in that agreement by

the defendant; and (3) an overt act in furtherance of the agreement."  *United States*

---

[9] Additionally, *Narog* is distinguishable because the indictment here charges a conspiracy to distribute a controlled substance instead of a conspiracy to distribute the ingredient for a controlled substance with knowledge that the ingredient would be used to manufacture the controlled substance.  Because distribution of an ingredient was not involved in this case, there was no threat that Achey would be convicted of an offense not charged by the indictment.  Thus, unlike in *Narog*, charging a subset of the statutory offense would have served no purpose in this case.  *See Sanders*, 668 F.3d at 1312 (distinguishing *Narog* on the basis that there was a risk that the defendants in that case did not know they were aiding in the manufacturing of a controlled substance).

12

*v. Wenxia Man*, 891 F.3d 1253, 1265 (11th Cir. 2018).  The existence of an agreement may be established by proof of an understanding between the participants to engage in illicit conduct, and the typical proof required to prove "legitimate contracts" is not required.  *United States v. Jones*, 765 F.2d 996, 1002 (11th Cir. 1985).  This proof may be provided through "circumstantial evidence, such as inferences from the conduct of the alleged participants or from circumstantial evidence of a scheme."  *Wenxia Man*, 891 F.3d at 1265 (quoting *United States v. Elledge*, 723 F.2d 864, 865 (11th Cir. 1984)).

But a simple buyer-seller controlled substance transaction does not, by itself, form a conspiracy.  *United States v. Dekle*, 165 F.3d 826, 829 (11th Cir. 1999).  Yet a conspiracy can be found if the evidence allows an inference that the buyer and seller knew the drugs were for distribution instead of merely understanding "their transactions to do no more than support the buyer's personal drug habit."  *Id.* at 829–30.  When considering whether a purchaser or seller of drugs was in fact a conspirator, an "agreement may be inferred when the evidence shows a continuing relationship that results in the repeated transfer of illegal drugs to the purchaser."  *United States v. Mercer*, 165 F.3d 1331, 1335 (11th Cir. 1999).  A conspiracy to distribute controlled substances may also be inferred from a drug transaction where the amount of drugs allows an inference of a conspiracy to

13

distribute drugs.  *United States v. Hernandez*, 433 F.3d 1328, 1333 (11th Cir. 2005).

First, there was sufficient evidence of an agreement between Achey and LS, the supplier from whom he purchased fentanyl.  The evidence allows an inference that LS knew that these purchases were more than buyer-seller transactions for Achey's personal use.  Achey told investigators that he obtained 50 grams of tetrahydrofuran fentanyl.  Given the potency of the substance, that amount was enough for Achey to supply many others.  And the record shows that Achey told the investigators that he obtained more than one type of controlled substance from the company.  Under these circumstances, a reasonable jury could infer that the supplier must have known that Achey would further distribute the drugs, and thus was acting with knowledge of the illegal purpose.

Second, there was also sufficient evidence as to Achey's wife, Achey's reseller, and Achey's repackagers.  Achey's wife was observed dropping off drug packages at various post offices.  Achey's reseller, "illianlikeavillian," sold smaller quantities of the controlled substances that he or she obtained from Achey.  Achey's repackagers assisted with the distribution by packing drugs into smaller packages and shipping them out.  These actors, in assisting Achey with the distribution of drugs, were acting as individuals who knew of Achey's illegal objective and intended to advance it.

14

It is thus clear that each of these four actors conspired with Achey to distribute controlled substances.  As to any of these actors, the evidence adduced at trial of their assistance in distribution was sufficient for a reasonable jury to infer that these actors knew of the illegal purpose of the operation and understood their participation in an illegal scheme.

## IV.    CONCLUSION

For the foregoing reasons, we **AFFIRM** Achey's conspiracy conviction.