[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 20-10930

Non-Argument Calendar

_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

JONATHAN BOHN,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Florida
D.C. Docket No. 6:19-cr-00143-RBD-EJK-1

_____

Before JORDAN, NEWSOM, and EDMONDSON, Circuit Judges.

PER CURIAM:

Jonathan Bohn appeals his conviction for distribution of a controlled substance resulting in death, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(C). No reversible error has been shown; we affirm.

Bohn's conviction stems from his involvement in selling a controlled substance to L.F. on 15 December 2017. Later that night, L.F. died of a drug overdose.

A federal grand jury issued a superseding indictment charging Bohn with "knowingly and intentionally distribut[ing] a controlled substance," in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(C). The superseding indictment alleged that the charged violation "involved a mixture and substance containing a detectable amount of *fentanyl and cocaine*" and that a person "died as a result of the use of the mixture and substance containing a detectable amount of *fentanyl and cocaine*, both Schedule II controlled substances, distributed by the defendant." (emphasis added).

Following a three-day trial, the jury found Bohn guilty of the charged offense. Bohn was sentenced to a mandatory minimum sentence of 20 years' imprisonment.

I.

Bohn first challenges the district court's jury instructions. Bohn contends that the district court amended constructively the superseding indictment when the district court instructed the jury that Bohn could be found guilty if the jury found that "L.F. would not have died but for the use of the cocaine *and/or* fentanyl distributed by [Bohn]." (emphasis added). Bohn also argues that the district court's "and/or" jury instruction misstated the law and misled the jury to his detriment.

We review *de novo* whether a constructive amendment has occurred. *See United States v. Holt*, 777 F.3d 1234, 1261 (11th Cir. 2015). A district court's instructions to the jury are reviewed for an abuse of discretion and will be upheld if they "accurately reflect the law" and do not mislead the jurors. *See United States v. Starke*, 62 F.3d 1374, 1380 (11th Cir. 1995).

"The Fifth Amendment guarantees that a defendant can be convicted only of crimes charged in the indictment." *Holt*, 777 F.3d at 1261. An impermissible constructive amendment of the indictment can happen "when the evidence at trial or the court's jury instructions deviate from what is alleged in the indictment." *Id.* In determining whether a constructive amendment has occurred, we look at whether "the essential elements of the offense contained in the indictment [have been] altered to broaden the possible bases for conviction beyond what is contained in the indictment." *Id.* Constructive amendment of an indictment is *per se* reversible error. *Id.*

Section 841(a)(1) makes it unlawful for a "person knowingly or intentionally . . . to manufacture, distribute, or dispense . . . a controlled substance." 21 U.S.C. § 841(a)(1). "[I]f death or serious bodily injury results from the use of such substance," the defendant is subject to an enhanced sentence between 20 years and life imprisonment. 21 U.S.C. § 841(b)(1)(C). "Because the 'death results' enhancement increase[s] the minimum and maximum sentences to which [a defendant is] exposed, it is an element that must be submitted to the jury and found beyond a reasonable doubt." *Burrage v. United States*, 571 U.S. 204, 210 (2014). Thus, to obtain a conviction for unlawful distribution of a controlled substance resulting in death, the government must prove two elements: (1) knowing or intentional distribution of a controlled substance, and (2) death caused by use of that controlled substance. *Id.*

We have said that "[t]he specific type of drug involved is not an element of § 841(a) but is instead 'relevant only for sentencing purposes.'" *See United States v. Achey*, 943 F.3d 909, 914 (11th Cir. 2019). Moreover, application of section 841(b)(1)(C)'s "death results" enhancement requires no specific type of drug: the enhancement applies in cases involving an unspecified amount of any Schedule I or II controlled substance. *See* 21 U.S.C. § 841(b)(1)(C).

"[A]n indictment may charge . . . the commission of any one offense in several ways." *United States v. Miller*, 471 U.S. 130, 136 (1985). "As long as the crime and the elements of the offense that sustain the conviction are fully and clearly set out in the indictment," a defendant's rights under the Fifth Amendment are not

violated when the indictment alleges more than one "means of committing the same crime." *Id.* We have recognized as "well established" that "where an indictment charges in the conjunctive several means of violating a statute, a conviction may be obtained on proof of only one of the means, and accordingly the jury instruction may properly be framed in the disjunctive." *See United States v. Simpson*, 228 F.3d 1294, 1300 (11th Cir. 2000) (rejecting a constructive-amendment argument where the indictment charged that defendant "did knowingly use *and* carry a firearm" and the trial court instructed that the jury could convict the defendant if the jury found the defendant "used *or* carried" a firearm).

Under the circumstances presented in this case, we cannot conclude that the district court's jury instructions amended constructively the superseding indictment. Because the type of drug involved is not an element of an offense under section 841(a)(1) and (b)(1)(C), the "and/or" language in the jury instructions did not alter the essential elements of the charged offense. The "death results" enhancement would have applied properly in this case whether the controlled substance that caused L.F.'s death consisted of cocaine (a Schedule II drug), of fentanyl (a Schedule II drug), or of a mixture of both. The controlled substances charged in Bohn's superseding indictment (cocaine and fentanyl) merely constituted different means by which section 841(a)(1) and (b)(1)(C) could be violated. That the superseding indictment charged in the conjunctive the different means of committing the offense and the jury was

instructed in the disjunctive constitutes no impermissible constructive amendment.  *See Simpson*, 228 F.3d at 1300.

Nor did the district court's jury instructions misstate the law or mislead the jury.  On appeal, Bohn contends that the "and/or" language in the jury instructions allowed the jury to convict Bohn without reaching a unanimous decision about which drug caused L.F.'s death.  We have said, however, that when an indictment alleges different means of committing an offense, the district court need not "instruct the jury to unanimously agree on which theory supported the verdict."  *See United States v. Verbitskaya*, 406 F.3d 1324, 1334 (11th Cir. 2005).  Moreover -- because Bohn agreed expressly with the district court's decision to deny the government's request for a jury instruction on unanimity -- Bohn is now precluded from challenging that ruling on appeal.  *See United States v. Feldman*, 931 F.3d 1245, 1260 (11th Cir. 2019) (explaining that "when a party agrees with a court's proposed instructions, the doctrine of invited error applies, meaning that review is waived even if plain error would result.").

## II.

Bohn next challenges the district court's denial of his motion for judgment of acquittal.  Bohn says the evidence presented at trial was insufficient to permit a jury to find that the drugs Bohn sold to L.F. were *the* drugs that resulted in L.F.'s death.

"We review *de novo* a district court's denial of judgment of acquittal on sufficiency of evidence grounds."  *United States v.*

*Rodriguez*, 732 F.3d 1299, 1303 (11th Cir. 2013). In determining the sufficiency of the evidence, "we consider the evidence in the light most favorable to the government, drawing all reasonable inferences and credibility choices in the government's favor." *Id.* We cannot overturn a jury's verdict unless no "reasonable construction of the evidence would have allowed the jury to find the defendant guilty beyond a reasonable doubt." *Id.*

"[W]hen the government relies on circumstantial evidence, the conviction must be supported by reasonable inferences, not mere speculation." *Id.* Because the "jury is free to choose among reasonable constructions of the evidence," the government need not "disprove every reasonable hypothesis of innocence." *United States v. Foster*, 878 F.3d 1297, 1304 (11th Cir. 2018) (quotations omitted).

Viewed in the light most favorable to the government, the evidence presented at trial was sufficient to permit a reasonable factfinder to conclude beyond a reasonable doubt that Bohn distributed knowingly the controlled substance that resulted in L.F.'s death.

On 15 December 2017, at 10:24 p.m., L.F. texted Bohn and asked for $20 worth of heroin. Bohn arranged to buy the heroin from a third person and met with L.F. shortly after 11 p.m. to complete the sale. L.F. and Bohn then both used a small amount of the drugs before parting ways. About 15 minutes later (at 11:28 p.m.), L.F. texted Bohn to question the identity of the drugs, saying she believed the drugs might be cocaine, not heroin.

After L.F. met with Bohn, L.F. arranged to buy Xanax from a person named DeJesus. At 11:51 p.m., L.F. texted DeJesus that she was on her way to meet him and was "about to leave." At 12:49 a.m., DeJesus texted L.F. and wrote, "are you coming?" L.F. never responded nor did L.F. answer a 1:18 a.m. phone call from DeJesus. L.F. was found dead in her home the following morning.

During a search of L.F.'s home, police officers found three different-sized Ziploc bags: a small green bag partially filled with drugs (a mixture of heroin, fentanyl, cocaine, and lidocaine) and two larger bags containing drug residue (cocaine, phenacetin, and lidocaine). The green bag was the only bag found that contained heroin. The government presented testimony that the size of the green bag was consistent with the size bag used typically to sell $20 worth of heroin.

Based on this evidence, a factfinder could infer reasonably that the small, partially-filled green bag found in L.F.'s home was the bag of drugs L.F. bought from Bohn on 15 December. Although L.F. attempted to purchase more drugs later that night, the text messages on L.F.'s phone indicate that L.F. never completed that purchase. The contents of the green bag were consistent with the drugs found in L.F.'s system, indicating that L.F. ingested the drugs shortly before her death. The medical examiner testified that L.F. died as a result of fentanyl and cocaine intoxication.

Bohn contends that the government's evidence does not rule out that L.F.'s death was caused by drugs L.F. purchased from someone other than from Bohn. Bohn says the government

presented no direct evidence connecting Bohn to the green Ziploc bag. Bohn also presented expert testimony that the absence of norfentanyl (a metabolite of fentanyl) found in L.F.'s body indicated that L.F. ingested the fatal dose of fentanyl less than 30 minutes before her death. Bohn speculates that L.F. used the drugs she got from Bohn shortly after 11:00 p.m., texted DeJesus more than 30 minutes later, and then obtained fentanyl-laced Xanax from another person that night. The jury, however, was free to -- and did -- reject this alternative hypothesis. *See Foster*, 878 F.3d at 1304.

The evidence viewed in the light most favorable to the government supports the jury verdict. The district court committed no error in denying Bohn's motion for judgment of acquittal.

## III.

Bohn next contends that the district court abused its discretion in denying Bohn's motion for a new trial, pursuant to Fed. R. Crim. P. 33. In support of his argument that the jury's verdict was against the weight of the evidence, Bohn relies on these things: (1) the absence of direct evidence tying Bohn to the green Ziplock bag; (2) that Bohn suffered no ill effects after using a small amount of the drugs sold to L.F.; (3) the absence of norfentanyl in L.F.'s system (indicating that L.F. died less than 30 minutes after ingesting the fatal dose of fentanyl) and Bohn's assertion that L.F. consumed the drugs she bought from Bohn at least 32 minutes before her death; and (4) the large amount of Xanax and fentanyl in L.F.'s system, supporting a theory that L.F. died as a result of consuming fentanyl-laced Xanax.

We review for abuse of discretion the district court's denial of a defendant's Rule 33 motion for a new trial based on a jury verdict against the weight of the evidence. *See United States v. Green*, 981 F.3d 945, 960 (11th Cir. 2020).

Upon a defendant's motion for a new trial under Rule 33, the district court "may vacate any judgment and grant a new trial if the interest of justice so requires." Fed. R. Crim. P. 33(a). "Motions for a new trial based on the weight of the evidence are 'not favored' and are reserved only for 'really exceptional cases.'" *United States v. Gallardo*, 977 F.3d 1126, 1140 (11th Cir. 2020). "To warrant a new trial under Rule 33, the evidence must preponderate heavily against the verdict, such that it would be a miscarriage of justice to let the verdict stand." *Id*. at 1139-40 (alteration and quotation omitted). A new trial may be granted only in the "rare case" where -- although the evidence is legally sufficient to convict the defendant -- "the credibility of the government's witnesses had been impeached and the government's case had been marked by uncertainties and discrepancies." *Id*.; *see United States v. Martinez*, 763 F.2d 1297, 1314 (11th Cir. 1985) (concluding a new trial was unwarranted when the defendant demonstrated only a "clear-cut conflict in testimony" -- "not an instance where the government's case was presented by impeached witnesses, while the testimony of the defendant's witnesses was unwavering and corroborated by independent evidence.").

The district court abused no discretion in denying Bohn's motion for a new trial. We have already concluded that the

evidence presented at trial was sufficient to sustain Bohn's conviction. Bohn has not challenged the credibility of the government's witnesses. And nothing indicates that the evidence against Bohn was marked with such uncertainties or discrepancies that would undermine confidence in the jury's verdict. The district court abused no discretion in concluding that Bohn's case was not the kind of "rare" or "exceptional" case that would warrant a new trial.

AFFIRMED.