[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 22-14095

Non-Argument Calendar

_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

*versus*

AVERY LANS,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Florida
D.C. Docket No. 6:22-cr-00092-RBD-DCI-2

_____

Before JORDAN, LUCK, and LAGOA, Circuit Judges.

PER CURIAM:

Avery Lans challenges his conviction and sentence for conspiracy to distribute cocaine. Lans makes several arguments on appeal. First, he argues that there was insufficient evidence for his conviction because the government failed to prove Lans knew he was involved in a conspiracy to distribute cocaine, or alternatively, that the government only showed a buyer-seller relationship. Second, Lans argues that the district court should not have admitted evidence obtained from his cell phone or from a storage unit because the evidence was irrelevant or, alternatively, more prejudicial than probative. Third, Lans argues that the district court plainly erred when it gave a deliberate ignorance instruction to the jury because the government's theory of the case was that Lans had actual knowledge. Finally, Lans argues that his sentence was procedurally unreasonable because the district court clearly erred in calculating his guideline range.

For the following reasons, we affirm.

## I.

A grand jury charged Lans, along with co-conspirator Wayne Stout, with one count of conspiracy to distribute and possess with intent to distribute five kilograms or more of cocaine, in violation of 18 U.S.C. §§ 846 and 841(b)(1)(A). Lans pled not guilty.

Prior to trial, the district court ordered the parties to file jointly proposed jury instructions and to indicate if any proposed instruction was in dispute.  The government filed a document titled, "JOINTLY PROPOSED JURY INSTRUCTIONS," which stated that "[a]lthough the United States is filing this document, both parties have reviewed its contents prior to its filing" and that "[a]ll instructions are jointly proposed, other than Government Proposed Instruction #6."  "Government Proposed Instruction #6" is not relevant to this appeal.  The government's document also contained "Jointly Proposed Instruction 12," which was an instruction on when a defendant's deliberate ignorance can establish that the defendant acted knowingly.

The government also submitted an exhibit list before trial, which included several exhibits "to be received in evidence by agreement without objection."  These agreed-upon exhibits—exhibits 29 to 34—included a set of photos, and both the court and the government's counsel referred to them as "joint exhibits."  At the start of trial, the district court received the agreed upon exhibits into evidence and were admitted without objection.

Lans, however, opposed another exhibit—exhibit 46—which depicted text conversations allegedly between Lans and his son, Olicity McMillan-Lans.  Lans argued that this evidence was irrelevant, that its potential prejudice outweighed any relevance, and that it should be excluded under Federal Rule of Evidence 404(b) because it was evidence of bad acts by someone other than the defendant.  The government argued that this evidence was relevant

because it would show that (1) McMillan-Lans, who had also been charged with cocaine trafficking, connected Lans with Stout, (2) that Lans and McMillan-Lans talked about cocaine trafficking "constantly," and that (3) McMillan-Lans sent Lans the address where he met Stout on the day of Lans's arrest.  The district court overruled Lans's objection, explaining that because Lans entered a plea of not guilty, he put at issue whether he had the knowledge and intent to engage in a cocaine trafficking conspiracy and that the text messages were relevant to those issues.

Turning to the government's trial witnesses, the government first called Carolina Martinez, a federal Homeland Security Investigations ("HSI") agent, who testified to the following.  The government was surveilling Stout as part of a money laundering investigation.  On June 1, 2022, Stout rented a bronze car and drove from Miami, Florida, to Orlando, Florida.  When he arrived in the Orlando area, Stout went to a storage unit—which agents later discovered was rented in his name—where he retrieved a duffel bag.  After leaving the storage unit, Stout went to an Orlando-area restaurant.  A silver car pulled into the restaurant's parking lot and left after "a very brief amount of time."  Martinez followed the silver car, which she said was driving in an unusual pattern, i.e., in a way as if someone was trying to see if they were being followed and trying to evade any followers.  Martinez identified Lans as the driver of the silver car.

The government next called Jean Saint-Louis, a Miami-area police detective serving on a federal HSI task force, who testified

to the following. Saint-Louis was part of the team surveilling Stout on June 1. He observed that, when the silver car pulled into the parking lot, Stout grabbed the duffel bag from his car and handed it to Lans, who took the bag and placed it in the passenger seat of the silver car. The entire interaction between Stout and Lans lasted about thirty seconds. During cross-examination, Saint-Louis testified that no one on the team saw Lans open the duffel bag.

Next, the government called Pedro Villa, another Miami-area detective with the task force, who testified to the following. Villa was part of the June 1 surveillance team and observed Stout as he traveled from the car rental place in Miami to the Orlando storage facility. Villa saw coolers in the storage unit and suspected there may be narcotics involved because, in his experience, narcotics importers who bring drugs into the country by boat sometimes use coolers to blend in with fishermen. While Villa followed Stout to the restaurant, he did not observe what happened in the parking lot. From there, Villa followed the silver car driven by Lans. At a red light, Lans appeared to spot Villa in the car's mirrors and, after that, began to drive fast—up to 90 miles per hour. Villa then pursued, activating his car's lights and siren. While driving, Lans dropped the duffel bag out the passenger-side window, and his car was stopped seconds later. During Villa's testimony, the government presented photos showing the duffel bag on the side of the road, with one photo showing the bag was slightly unzipped when it was found. According to Villa, the bag contained 5 kilograms, or about $135,000 worth, of cocaine wrapped in distinctive packaging, and Villa stated that groups marked their cocaine to distinguish it

6                   Opinion of the Court                  22-14095

from other organizations.    Villa said that the amount of drugs found in the bag was for distribution, not consumption.

The government then called Robert Palombo, a HSI agent, who testified as follows.  Palombo was part of the June 1 surveillance team and later searched the storage unit that Stout visited. The unit contained three coolers filled with 109 bricks of cocaine, which were wrapped in different packing that signified they likely belong to different organizations.  One cooler contained bricks labeled and embossed with the same symbol as the bricks found in the duffel bag.  Exhibits 29 through 34 were photos of the storage unit's contents.

Finally, the government called Robert Picket, another task force detective, who testified to the following.  Lans was carrying two cell phones when he was arrested, and from one of the phones, investigators recovered a text message conservation on the application, WhatsApp.  One June 1, 2022, an unidentified sender messaged Lans's phone with the address of the restaurant where Stout and Lans exchanged the duffel bag and immediately called Lans's phone.  After reviewing the text conversation, investigators concluded that the sender was McMillan-Lans because: (1) the sender referred to Lans as "pop's"; (2) the sender sent Lans a link to a court document from McMillan-Lans's criminal case[1]; and (3) on

---

[1] Picket read from McMillan-Lans's court document, which stated that he was charged with drug possession and importation involving around 453.78 kilograms of cocaine.  The district court gave a limiting instruction for the injury to only consider this document as it related to the charges against Lans.

McMillan-Lans's birthday, Lans sent the sender a message wishing a happy "b day" and referring to the sender as "son." This conversation also contained shared links to news stories and court documents about cocaine trafficking and importation, which, to Picket, went beyond a news interest in the topic and gave the impression of "someone coaching somebody into how to do certain things and what to do if you were caught doing them." Further, McMillan-Lans texted Lans the contact information for "Weezy 4," who was identified as Stout. The associated phone number was the same number used to rent the storage unit. Lans and Stout called each other four times on March 30, and car rental agreements and toll road records indicated that the two both traveled around March 31, 2022. In Picket's experience, drug traffickers often use applications like WhatsApp, talk in code, limit what is communicated in writing, and use a burner phone. And Lans was using a burner phone and attempted to hide his identity as the phone subscriber.

The government then rested, and Lans moved for judgment of acquittal, arguing that the government had not proved Lans knew what was in the duffel bag and therefore did not prove he knowingly conspired to distribute cocaine. The district court denied the motion. Lans presented no evidence and renewed his motion, which the court again denied.

Before closing arguments, the court held a charge conference and went through the revised jury instructions with both parties. The court had proposed rewordings for some instructions, including the deliberate ignorance instruction. Neither party

objected to those changes or the inclusion of the deliberate igno-
rance instruction during the charge conference, and the jury re-
ceived a deliberate ignorance instruction. The jury found Lans
guilty. Lans moved for a new trial and renewed his motion for a
judgment of acquittal. The court denied these motions.

A probation officer prepared a presentence investigation re-
port ("PSI"). The original PSI stated that Lans's offense involved
116.66 kilograms of cocaine and 32.65 grams of crack cocaine,
based on the drugs that were found in the storage unit with the
same packaging as the drugs in the duffel bag. Accordingly, his
base offense level was 34, pursuant to U.S.S.G. § 2D1.1(a)(5) and
(c)(3). The original PSI added two levels, pursuant to U.S.S.G.
§ 2D1.1(b)(12), because the offense involved the maintenance of a
premises for drug trafficking—the storage unit. Lans objected to
the drug amount, the base offense level, and the two-level increase
for maintaining for drug trafficking, among other factual objec-
tions.

Then, a probation officer prepared an amended PSI that re-
solved the objections, assigning him a base offense level of 30 based
only on the 5 kilograms of cocaine found in the duffel bag and re-
moving the two-level premises enhancement. Lans also received a
two-level enhancement for obstruction of justice because he "reck-
lessly created a substantial risk of death or serious bodily injury to
another person in the course of fleeing from a law enforcement of-
ficer."

The amended PSI included the following criminal history. In 1989, Lans was charged with second-degree murder. The offense involved Lans firing multiple shots at two individuals, and a week later, when officers were arresting Lans, he was involved in a shootout with police officers. He was sentenced to 40 years' imprisonment, released on parole in 2009, and then pardoned in 2014. In 2013, Lans was charged with armed assault after he pointed a handgun at someone, threatened him, and struck him in both eyes with a cell phone, but he was acquitted. The amended PSI also noted that, in 2016, Lans was diagnosed with stage four prostate cancer, which went into remission following treatment but returned in 2020 and 2022.

With a total offense level of 32 and a criminal history score of II, Lans's guideline range was 135 to 168 months' imprisonment. The government objected to the amended PSI, essentially asking the district court to reinstate the original PSI, with a base level of 34 based on the higher drug amount and the two-level premises enhancement.

At the sentencing hearing, federal agent Brian Di Perna testified that of the about 100 cocaine bricks recovered from the storage unit, 21 were similarly wrapped to the bricks found in the duffel bag. The district court sustained the government's objections in part and overruled them in part. The district court found that the government had proved by a preponderance of the evidence that Lans's involvement in the conspiracy was sufficient to hold him responsible for the 21 similarly marked bricks in the storage unit and

the 5 kilograms in the duffel bag. Likewise, the court found that it was foreseeable to Lans that the drugs that he acquired on the date of the exchange were stored in a facility and to impose responsibility on him for maintaining a premises for drug trafficking. The court found that Lans had a base offense level of 32 and a two-level enhancement for obstruction of justice, and that the two-level enhancement for maintaining a drug trafficking premises applied to him. Those findings resulted in a guideline range of 210 to 262 months' incarceration.

Once the guideline calculation was established, the government asked for a sentence at the top of the guideline range based on Lans's role in the conspiracy and his criminal history. Lans asked for a sentence below the guideline range based on his health and argued that his criminal history should not weigh in favor of a longer sentence because he was acquitted of one offense and pardoned for another.

The district court sentenced Lans to 240 months' imprisonment. The district court reasoned that the sentence was appropriate because of the scope of Lans's involvement in an extensive conspiracy to import narcotics, as well as the need to impose a sentence that was just, that promoted respect for the law, and that provided sufficient protection for the public. The district court also found that Lans's criminal history category underrated the danger he posed to the public. But the district court found that Lans's health was a mitigating factor that warranted a slightly lower sentence than he would otherwise receive. The district court then

stated it "would have upwardly varied to impose a 240-month sentence on Mr. Lans irrespective of [its] ruling on the [g]overnment's objection[s]" because of his criminal history. And the district court stated that it had "taken into account all of the factors identified in" 18 U.S.C. § 3553(a).

This appeal ensued.

## II.

Lans first argues that the government failed to prove every element of the crime beyond a reasonable doubt, insisting that there was insufficient evidence for his conviction because the government failed to prove Lans knew he was involved in a conspiracy to distribute cocaine, or alternatively, that the government only showed a buyer-seller relationship.

We review the sufficiency of the evidence to support a conviction *de novo*, "viewing the evidence in the light most favorable to the government and drawing all reasonable inferences and credibility choices in favor of the jury's verdict." *United States v. Rodriguez*, 218 F.3d 1243, 1244 (11th Cir. 2000). "The district court's denial of motions for judgment of acquittal will be upheld if a reasonable trier of fact could conclude that the evidence establishes the defendant's guilt beyond a reasonable doubt." *Id.*

"It is not necessary that the evidence exclude every reasonable hypothesis of innocence or be wholly inconsistent with every conclusion except that of guilt, provided that a reasonable trier of fact could find that the evidence established guilt beyond a reasonable doubt." *United States v. Ellisor*, 522 F.3d 1255, 1271 (11th Cir.

2008) (quoting *United States v. Calderon*, 127 F.3d 1314, 1324 (11th Cir. 1997)). "In other words, the question is whether reasonable minds *could* have found guilt beyond a reasonable doubt, not whether reasonable minds *must* have found guilt beyond a reasonable doubt." *Id.* (emphasis in original).

"The prerequisites to a finding of guilt on a drug conspiracy count are proof that two or more persons agreed to commit a drug-related offense, that the defendant knew of this conspiracy, and that he agreed to become a member." *United States v. Carrascal-Olivera*, 755 F.2d 1446, 1450 (11th Cir. 1985). "The existence of these elements may be established through circumstantial evidence." *Id.* But proof that the defendant "knew he was involved in something criminal," absent more, is insufficient to prove that the defendant knew he was part of a conspiracy to distribute a controlled substance. *See United States v. Louis*, 861 F.3d 1330, 1334 (11th Cir. 2017).

"[A] simple buyer-seller controlled substance transaction does not, by itself, form a conspiracy." *United States v. Achey*, 943 F.3d 909, 917 (11th Cir. 2019). But "a conspiracy can be found if the evidence allows an inference that the buyer and seller knew the drugs were for distribution," rather than for the buyer's personal drug habit. *Id.* A reasonable jury can infer a conspiracy to distribute from the amount of drugs involved in a transaction. *Id.*

We conclude that the district court did not err in denying Lans's motions for judgment of acquittal because a reasonable juror could find that the government proved Lans's knowledge of his

involvement in a cocaine distribution conspiracy beyond a reasonable doubt based on the circumstantial evidence it presented. Viewing the evidence in the light most favorable to the government and drawing all reasonable inferences and credibility determinations in its favor, the evidence shows Lans knew that he was part of a cocaine trafficking conspiracy. For example, Lans used an encrypted messaging platform, communicated through vague messages and phone calls, and attempted to evade police and dispose of the duffel bag in the silver car after he left the restaurant parking lot before he was arrested. The government also presented evidence showing that Lans knew he was distributing cocaine and not just involved in "something criminal," e.g., his text messages to his son that were often about cocaine trafficking. The government also showed that Lans knew what was in the duffel bag by presenting evidence that the bag was partially unzipped and that Lans and Stout had previously met. And the amount of cocaine found in the duffel bag—$135,000 worth—suggests that it was unlikely to be entrusted to an unwitting courier or to be for personal consumption. While Lans argues that there was no evidence he opened the duffel bag and that the bag could have equally contain laundered money, again, "[i]t is not necessary that the evidence exclude every reasonable hypothesis of innocence" so long as a reasonable trier of fact could have, not must have, found guilt beyond a reasonable doubt. *See Ellisor*, 522 F.3d at 1271.

Because the government presented sufficient evidence such that a jury could reasonably reach a guilty verdict, we affirm as to this issue.

### III.

Lans next argues that the evidence derived from his cell phone and from the storage unit should have been excluded as irrelevant or, alternatively, as more prejudicial than probative.

We normally review a district court's evidentiary ruling for abuse of discretion. *United States v. Elysee*, 993 F.3d 1309, 1347 (11th Cir. 2021). "[T]he district court is uniquely situated to make nuanced judgments on questions that require the careful balancing of fact-specific concepts like probativeness and prejudice, and we are loathe to disturb the sound exercise of its discretion in these areas." *United States v. Troya*, 733 F.3d 1125, 1131 (11th Cir. 2013) (quoting *United States v. Jernigan*, 341 F.3d 1273, 1285 (11th Cir. 2003)). But objections or arguments that are not raised at the district court are reviewed for plain error. *See United States v. Evans*, 478 F.3d 1332, 1338 (11th Cir. 2007). To prove plain error, a defendant must show (1) error, (2) that is plain, and (3) that affects substantial rights. *United States v. Monroe*, 353 F.3d 1346, 1349 (11th Cir. 2003). If all three conditions are met, an appellate court may exercise its discretion to recognize the error if it "seriously affects the fairness, integrity, or public reputation of judicial proceedings." *Id.* (alteration adopted) (quoting *United States v. Lejarde-Rada*, 319 F.3d 1288, 1290 (11th Cir. 2003)). An error is plain when it is clear or obvious. *Id.* at 1352.

Any "evidence that makes the existence of any fact at issue more or less probable" is relevant. *Huddleston v. United States*, 485

U.S. 681, 687 (1988).  Relevant evidence is admissible unless there is a rule that provides for its exclusion.  Fed. R. Evid. 402.

A court may exclude relevant evidence if its probative value is substantially outweighed by a danger of unfair prejudice.  Fed. R. Evid. 403.  "[I]n a criminal trial, relevant evidence is inherently prejudicial; it is only when *unfair* prejudice substantially outweighs probative value that the rule permits exclusion."  *United States v. Edouard*, 485 F.3d 1324, 1346 (11th Cir. 2007) (emphasis in original) (quoting *United States v. King*, 713 F.2d 627, 631 (11th Cir. 1983)).  Unfair prejudice "speaks to the capacity of some concededly relevant evidence to lure the factfinder into declaring guilt on a ground different from proof specific to the offense charged."  *Old Chief v. United States*, 519 U.S. 172, 180 (1997).  "In reviewing issues under Rule 403, we look at the evidence in a light most favorable to its admission, maximizing its probative value and minimizing its undue prejudicial impact."  *United States v. Brown*, 441 F.3d 1330, 1362 (11th Cir. 2006).

Evidence of other crimes, wrongs, or bad acts is not admissible to prove a person's character to show that he acted in conformity with that character.  Fed. R. Evid. 404(b)(1).  But such evidence may be admissible for another purpose, such as to prove intent, knowledge, or absence of mistake.  Fed. R. Evid. 404(b)(2).  Part of the test to determine whether evidence is admissible under Rule 404(b) is whether the evidence satisfies Rule 403.  *United States v. Chavez*, 204 F.3d 1305, 1317 (11th Cir. 2000).  In other words, evidence of other crimes, wrongs, or bad acts is not admissible if the

evidence's probative value is substantially outweighed by its danger of undue prejudice. *Id.*; Fed. R. Evid. 403.

A limiting instruction to the jury can diminish any unfair prejudice caused by the admission of Rule 404(b) evidence. *Edouard*, 485 F.3d at 1346. A jury is presumed to follow limiting instructions. *United States v. Hill*, 643 F.3d 807, 829 (11th Cir. 2011).

We conclude that the district court did not abuse its discretion in admitting the cell phone evidence because it was relevant to Lans's knowledge of the conspiracy, and the probative value was not substantially outweighed by a danger of unfair prejudice. The phone records included conversations between Lans and another charged cocaine trafficker and centered on investigations and criminal cases involving cocaine. The records were relevant because Lans's knowledge was at issue, and the phone records made the fact that Lans knowingly participated in a conspiracy to distribute cocaine more likely. The evidence had significant probative value because, as discussed above, Lans's messages made it more likely that he knew he was involved in cocaine trafficking, not merely "something criminal." And while, like all relevant evidence, the phone evidence was prejudicial, Lans fails to articulate how the evidence was *unfairly* prejudicial. Lans asserts that the evidence paints Lans as a cocaine trafficker, but that was the very thing that the government was trying to prove. To the extent that there was a risk that a jury would unfairly conflate McMillan-Lans's alleged crimes with Lans's conduct, the risk was mitigated by the two limiting instructions given to the jury which the jury presumably

followed.  Because there was significant probative value and little risk of unfair prejudice, the district court was within its discretion when it found that the evidence was admissible.

As to the storage unit evidence, Lans did not object to the evidence before the district court and fails to show that the district court plainly erred in admitting the evidence.  The storage unit evidence had probative value because it showed the scope of the conspiracy.  And Lans had failed to show that the risk of *unfair* prejudice from the evidence *substantially* outweighed the probative value to such a degree that it was "obvious."

Accordingly, we affirm as to this issue.[2]

## IV.

Lans further argues that the district court erred by instructing the jury on deliberate ignorance because the evidence did not show that he purposely avoided learning what was in the duffel bag.

---

[2] In his reply brief, Lans argues for the first time that he was denied effective assistance of counsel because his counsel failed to object to the admission of the storage unit evidence.  But "[a]n appellant in a criminal case may not raise an issue for the first time in a reply appellate brief," *United States v. Levy*, 379 F.3d 1241, 1242 (11th Cir. 2004), and we generally do not review a claim of ineffective assistance of counsel on direct appeal when the district court has not heard the claim, nor developed a factual record.  *See United States v. Khoury*, 901 F.2d 948, 969 (11th Cir.), *modified by* 910 F.2d 713 (11th Cir. 1990).  We therefore decline to address this argument.

But we are precluded from reversing or invoking plain-error review when a party has invited the error. *United States v. Silvestri*, 409 F.3d 1311, 1327 (11th Cir. 2005). "The doctrine of invited error is implicated when a party induces or invites the district court into making an error." *Id.*

Here, because Lans and the government jointly proposed jury instructions that included a deliberate ignorance instruction, the invited error doctrine bars Lans's challenge. Indeed, the filing that proposed the instructions states, "[a]lthough the United States is filing this document, both parties have reviewed its contents prior to its filing. All instructions are jointly proposed, other than Government Proposed Instruction #6." The deliberate ignorance instruction, however, was contained in Jointly Proposed Instruction 12. And there is nothing in the record showing that the government filed a false statement in this filing.

We therefore decline to review the instructions because Lans invited any error. *See id.* at 1328.

## V.

Lans also argues that the district court's sentence was procedurally unreasonable because it was based on clearly erroneous facts.

We review *de novo* the district court's legal interpretation of the sentencing guidelines and its application of the guidelines to the facts. *United States v. Cubero*, 754 F.3d 888, 892 (11th Cir. 2014). We review a district court's findings of fact for a sentencing

enhancement under a clear error standard. *United States v. Ghertler*, 605 F.3d 1256, 1267 (11th Cir. 2010).

In criminal cases, any errors that do "not affect substantial rights must be disregarded." Fed. R. Crim. P. 52(a). In sentencing cases, an error in calculating the advisory guideline range may be harmless if the district court would have imposed the same sentence with a different guidelines calculation. *See United States v. Keene*, 470 F.3d 1347, 1348–50 (11th Cir. 2006). If a district court states that its sentence would be the same with a different guideline calculation, we assume there was an error, calculate the guideline range without the error, and analyze whether the sentence would be substantively reasonable under that guideline range. *See id.* If the sentence would be reasonable, any error in the guideline calculation was harmless, and we will not address the disputed calculation. *Id.* at 1350.

We review the substantive reasonableness of a sentence under an abuse-of-discretion standard. *Gall v. United States*, 552 U.S. 38, 51 (2007). The party challenging a sentence bears the burden of establishing that it is unreasonable "in light of the entire record, the § 3553(a) factors, and the substantial deference afforded sentencing courts." *United States v. Rosales-Bruno*, 789 F.3d 1249, 1256 (11th Cir. 2015). Section 3553(a) mandates that the district court consider the nature and circumstances of the offense, the defendant's history and characteristics, the purposes of sentencing, the kinds of sentences available, the guideline sentencing range, any pertinent policy statements, the need to avoid unwarranted

sentencing disparities between similarly situated defendants, and the need to provide restitution to any victims. § 3553(a).

The district court does not have to give all the factors equal weight, and the determination of how much weight to assign to each factor is within its discretion. *Rosales-Bruno*, 789 F.3d at 1254. "[D]iscretion in weighing sentencing factors is particularly pronounced when it comes to weighing criminal history." *United States v. Riley*, 995 F.3d 1272, 1279 (11th Cir. 2021). District courts "have broad leeway in deciding how much weight to give to prior crimes," and we have repeatedly affirmed the substantive reasonableness of major-upward-variance sentences for defendants with significant criminal histories. *Id.* (quoting *Rosales-Bruno*, 789 F.3d at 1254). And "[a] sentence imposed well below the statutory maximum penalty is another indicator of reasonableness." *United States v. Croteau*, 819 F.3d 1293, 1310 (11th Cir. 2016).

A defendant responsible for at least 5 kilograms but less than 15 kilograms of cocaine has a base offense level of 30. U.S.S.G. § 2D1.1(c)(5). A defendant responsible for at least 15 kilograms but less than 50 kilograms of cocaine has a base offense level of 32. *Id.* § 2D1.1(c)(4). The sentencing guidelines prescribe a two-level enhancement for a defendant who "maintained a premises for the purpose of manufacturing or distributing a controlled substance." *Id.* § 2D1.1(b)(12). A defendant with a criminal history category of II and an offense level of 32 would have a guideline range of 135-168 months' imprisonment. U.S.S.G. Ch. 5, Pt. A. A defendant

with the same criminal history category and an offense level of 36 would have a guideline range of 210-262 months. *Id.*

We need not reach the question of whether the district court erred in calculating Lans's guideline range because even assuming for the sake of argument there was error, it was harmless. Because the district court stated that its sentence would be the same under the guideline range that Lans contends is correct, we ask whether his 240-month sentence would be substantively reasonable under that range. *Keane*, 470 F.3d at 1348–50.

With the lower drug quantity and without the enhancement for maintaining a premises for distributing drugs, Lans's guideline range would be 135 to 168 months' imprisonment. A 240-month sentence would be a 72-month upward variance from that guideline range, but in light of Lans's criminal history and the substantial deference given to sentencing courts, it would be substantively reasonable. Indeed, Lans's criminal history included shooting at two individuals, killing one of them, and participating in a shootout with police officers. And Lans's present offense also involved dangerously evading the police. The court reasonably concluded that the sentencing guidelines underrated Lans's danger to the public and was within its discretion to place greater weight on criminal history than on the guideline range or other sentencing factors. *See Riley*, 995 F.3d at 1279. Finally, we note that the 240-month sentence is well below the statutory maximum penalty of life, further indicating reasonableness. *See Croteau*, 819 F.3d at 1310.

22                    Opinion of the Court                    22-14095

Thus, any error in calculating Lans's guideline range was harmless.  Accordingly, we affirm as to this issue.

## VI.

For the reasons stated, we affirm Lans's conviction and sentence.

**AFFIRMED.**