[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 16-11349

_____

D.C. Docket No. 1:15-cr-20761-DMM-2

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

versus

TERRY PIERRE LOUIS,

Defendant - Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(July 10, 2017)

Before TJOFLAT and WILSON, Circuit Judges, and ROBRENO,* District Judge.

WILSON, Circuit Judge:

_____

   * Honorable Eduardo C. Robreno, United States District Judge for the Eastern District of Pennsylvania, sitting by designation.

The burden is on the government to prove all elements of a crime beyond a reasonable doubt. *See In re Winship*, 397 U.S. 358, 364, 90 S. Ct. 1068, 1072 (1970). When a man's liberty is at stake, we must be vigilant with this burden. The government failed to offer evidence from which a reasonable jury could find that Terry Pierre Louis had knowledge that the boxes placed in the backseat of his car contained a controlled substance. Without proof of this essential element, the government has failed to meet its burden. Therefore, we must reverse.

## I.

In September 2015, Customs and Border Protection received a tip that the *Ana Cecilia*, a coastal freighter used to export goods from the United States to Haiti, was returning from Haiti to Miami carrying narcotics. When the boat arrived Customs agents boarded the vessel and searched for narcotics for four days. None were found. At one point during the search, Louis, an employee of Ernso Borgella, the owner of the *Ana Cecilia*, brought the confined crewmembers food.[1] Following the unsuccessful search, Customs set up surveillance of the *Ana Cecilia*.

During the surveillance, an agent observed the deck watchman go inside the ship and come out carrying two large cardboard boxes. Agents later watched as a forklift picked up two boxes and drove them off the *Ana Cecilia*. Borgella was

---

[1] Testimony from the agent guarding the ship revealed that Louis went aboard the *Ana Cecilia* for less than five minutes to deliver the food. There was no evidence presented as to Louis's exact job duties, but the operator of the shipyard testified that he saw Louis working in an office in the shipyard and that he believed Louis performed administrative tasks for Borgella.

2

following the forklift and speaking to its driver, who placed the two boxes on the dock where an unidentified man covered them with a tarp.  Later on, Borgella directed a white Nissan to park near the boxes and then reached inside the passenger rear seat and opened the door.  Two unidentified men then loaded the boxes into the back seat of a white Nissan.  Louis then began to slowly drive the Nissan to the front of the shipyard, while Borgella walked alongside it.  Once outside the front gate of the shipyard, the Nissan was stopped by unmarked law enforcement vehicles with lights and sirens.  Louis then exited the car and began to run.  One of the agents pursued Louis, but lost sight of him in the shipyard.  The agents found Borgella and detained him.[2]  The agents searched the Nissan and found two sealed boxes in the back seat containing 111 bricks of cocaine.

Louis was charged with (1) conspiracy to possess with intent to distribute cocaine, in violation of 21 U.S.C. §§ 841(b)(1)(A) and 846, and (2) possession with intent to distribute cocaine, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(A).  During the two-day trial, the government put forth evidence including surveillance photos and videos showing that Louis was near the *Ana Cecilia*, that he drove a car containing boxes of cocaine, and that he ran when confronted by law enforcement.  Following the government's case-in-chief, the defense moved

_____

[2] Borgella was charged with conspiracy to possess with intent to distribute cocaine, possession with intent to distribute cocaine, conspiracy to import cocaine, and importation of cocaine.  He pleaded guilty before trial and signed a plea agreement and factual proffer.  He was sentenced to 108 months' imprisonment.

3

for an acquittal, the motion was denied, and the defense rested.  A jury found Louis guilty on both counts.  Louis moved for an acquittal again after the jury verdict but his motion was denied.  Despite Louis's motions at sentencing for a role reduction and safety-valve relief, he was sentenced to 151 months' imprisonment.

## II.

We review de novo a district court's denial of a motion for acquittal.  *United States v. Perez-Tosta*, 36 F.3d 1552, 1556 (11th Cir. 1994).  When considering claims regarding sufficiency of the evidence, we view the evidence in the light most favorable to the government.  *See United States v. Ortiz*, 318 F.3d 1030, 1036 (11th Cir. 2003) (per curiam).  "[I]f the evidence viewed in the light most favorable to the prosecution gives equal or nearly equal circumstantial support to a theory of guilt and a theory of innocence of the crime charged, then a reasonable jury must necessarily entertain a reasonable doubt."  *Cosby v. Jones*, 682 F.2d 1373, 1383 (11th Cir. 1982).

Eleventh Circuit precedent is clear that it is critical under § 846 and § 841 that the government must prove that the defendant had knowledge that his alleged crime involved a controlled substance.  To establish a violation of § 846 the government must prove beyond a reasonable doubt that two or more persons agreed to commit a drug-related offense, that the defendant knew of the conspiracy, and that he agreed to become a member.  *See e.g.*, *United States v.*

4

*Azmat*, 805 F.3d 1018, 1035 (11th Cir. 2015).  "Association with a co-conspirator or presence at the scene of the crime is insufficient to prove participation in a conspiracy."  *United States v. Hernandez*, 896 F.2d 513, 518 (11th Cir. 1990). "[A]lthough the government is not required to prove that [the defendant] knew every detail" of the conspiracy, "the government must prove that he 'knew the essential nature of the conspiracy.'"  *United States v. Charles*, 313 F.3d 1278, 1284 (11th Cir. 2002) (per curiam) (quoting *United States v. Payne*, 750 F.2d 844, 859 (11th Cir.1985)).  "A defendant who is unaware that he is in the process of possessing the drugs that are the object of the conspiracy is not, by any stretch of the imagination, aware of the essential nature of the conspiracy."  *United States v. Ohayon*, 483 F.3d 1281, 1291 (11th Cir. 2007); *see also Charles*, 313 F.3d at 1284, 1287 (reversing a conviction because there was insufficient evidence that the defendant knew the specific purpose of the conspiracy involved cocaine).

To sustain a conviction of the substantive offense of possession under § 841, the government must prove knowing possession of a controlled substance with intent to distribute it.  *See United States v. Figueroa*, 720 F.2d 1239, 1244 (11th Cir. 1983). The government must therefore prove that the defendant knew "the substance [wa]s a controlled substance."  *See, e.g.*, *United States v. Sanders*, 668 F.3d 1298, 1309 (11th Cir. 2012) (per curiam) (internal quotation marks omitted); *United States v. Gomez*, 905 F.2d 1513, 1514 (11th Cir. 1990).

5

Recently in *McFadden v. United States*, the Supreme Court reemphasized this knowledge requirement.  576 U.S ___, ___, 135 S. Ct. 2298, 2302 (2015). Justice Thomas, writing for a near unanimous court, wrote that § 841 "requires the [g]overnment to establish that the defendant knew he was dealing with 'a controlled substance.'"  *See id.*  The Court rejected the government's proposed broader definition that the knowledge requirement would be met if the "defendant knew he was dealing with an illegal or regulated substance under *some* law."  *See id*. at 2306 (internal quotation marks omitted)(emphasis added).

Following the clear guidance set forth in *McFadden*, to prove that Louis "knowingly or intentionally . . . possess[ed] with intent to . . . distribute . . . a controlled substance" under § 841 the government would have to prove that Louis knew the boxes contained a controlled substance, and not just contraband illegal under *some* law.

### III.

After a careful review of the record and the parties' briefs, we conclude that no reasonable jury could find from the little evidence presented during the two-day trial that Louis is guilty of violating § 846 and § 841 beyond a reasonable doubt. Viewing the evidence in the light most favorable to the government, we can infer that Louis's presence and flight are evidence that he knew he was involved in something criminal.  We cannot find, however, that the government proved beyond

6

a reasonable doubt that Louis knew the boxes placed in his car contained a controlled substance.  And because the evidence does not prove that Louis knew that the boxes contained a controlled substance, the evidence does not prove that he knew he was involved in a conspiracy to possess a controlled substance.

During a short trial, the government presented evidence that Louis was seen around the shipyard (where he worked) and was seen near Borgella (his employer). The government relied heavily on evidence that Louis fled when suddenly surrounded by law enforcement.  The government's case was built upon inferences from Louis's presence and flight.  However, the government presented no evidence that Louis knew that there was a controlled substance (as opposed to any other contraband) within the sealed boxes placed by others in his backseat.  No one testified as to Louis's knowledge and Louis himself did not testify.

We recognize that "[e]vidence of flight is admissible to demonstrate . . . guilt," *United States v. Blakely*, 960 F.2d 996, 1000 (11th Cir. 1992), and  Louis's flight might be persuasive evidence that he knew the boxes contained contraband illegal under some law.  But the evidence is not enough to prove that Louis knew the boxes contained a controlled substance.[3] *See McFadden,* 135 S. Ct. at 2302; *Sanders*, 668 F.3d at 1309.

---

[3] For this same reason, the government's evidence that the *Ana Cecilia* only exported goods, and did not import them, might be evidence that Louis should have been suspicious the boxes

7

In addition to Louis's flight, the government relies on Louis's presence and interactions around the shipyard. But the government puts forth no evidence of any conversations where Louis was informed of a plan regarding a controlled substance. There is no evidence, circumstantial or otherwise, strong enough to prove beyond a reasonable doubt that Louis knew that there was a controlled substance in the boxes. The government's evidence of presence and flight was simply not enough to support a finding of knowledge beyond a reasonable doubt.

Neither are we persuaded by an entrustment theory, which attempts to imply knowledge when there is evidence of a high quantity of drugs because "a 'prudent smuggler' is not likely to entrust such valuable cargo to an innocent person without that person's knowledge." *See United States v. Quilca-Carpio*, 118 F.3d 719, 722 (11th Cir. 1997) (per curiam). We do not find *Quilca-Carpio* sufficiently analogous here, as Louis's presence with the boxes was only brief. In *Quilca-Carpio*, the defendant checked an unusually heavy roller-bag as his own luggage on an international flight from Lima, Peru to the United States. *See id.* at 721–22. However, Louis was in the Nissan only briefly as he slowly drove with Borgella walking alongside the car. Indeed, Louis was never left completely alone with the boxes, like the defendant in *Quilca-Carpio*. This hardly supports a conclusion that

---

contained contraband illegal under some law. But this fact is not enough to prove that Louis knew the boxes contained a controlled substance.

Louis was sufficiently entrusted with the cocaine to establish his knowledge, and it is surely not enough to prove his knowledge beyond a reasonable doubt.

## IV.

The government is charged with proving "beyond a reasonable doubt . . . *every fact* necessary to constitute the crime with which [the defendant] is charged." *See Winship*, 397 U.S. at 364, 90 S. Ct. at 1073 (emphasis added).  We must hold the government accountable to this burden.  While the circumstances presented by the government here might show that it is more likely than not that Louis knew that the boxes contained some sort of contraband, the permissible inferences do not support a holding that the government proved that Louis *knew* this was a conspiracy involving a controlled substance or that he knew he was in possession of a controlled substance.  Without this requisite showing of knowledge, the government has failed to prove every fact necessary to meet its burden.[4]

**REVERSED.**

---

[4] Due to our holding regarding sufficiency of the evidence, we need not consider Louis's challenges to the role reduction and safety valve decisions at his sentencing.