[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 19-11318
Non-Argument Calendar

_____

D.C. Docket No. 2:17-cr-00544-LSC-JHE-4

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

NICHOLAS FAUSTO CISNERUS,
a.k.a. Nico,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Northern District of Alabama

_____

(February 28, 2020)

Before JORDAN, ROSENBAUM, and BRANCH, Circuit Judges.

PER CURIAM:

After a jury trial, Nicholas Cisneros[1] was convicted of conspiracy to possess with intent to distribute heroin, cocaine hydrochloride, and methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(c), and 846.  On appeal, Cisneros argues that the evidence presented at trial was insufficient to support the jury's guilty verdict.  After careful review, we affirm.

We review the sufficiency of the evidence *de novo*.  *United States v. Reeves*, 742 F.3d 487, 497 (11th Cir. 2014).  In reviewing for evidentiary sufficiency, we view the evidence, whether direct or circumstantial, "in a light most favorable to the jury verdict and draw all inferences in its favor."  *Id.*; *United States v. Williams*, 390 F.3d 1319, 1324 (11th Cir. 2004).  We must affirm the conviction "if a reasonable jury could have found the defendant guilty beyond a reasonable doubt."  *Reeves*, 742 F.3d at 497.

To support a conviction for conspiracy to distribute illegal drugs in violation of 21 U.S.C. § 846, "the government must prove beyond a reasonable doubt that two or more persons agreed to commit a drug-related offense, that the defendant knew of the conspiracy, and that he agreed to become a member."  *United States v. Louis*, 861 F.3d 1330, 1333 (11th Cir. 2017).  The government must demonstrate that the defendant "knew the essential nature of the conspiracy," *id.* (quotation marks

---

[1] In his briefing, the appellant spells his last name "Cisneros."  We therefore use that spelling.

2

omitted), not that he knew "all the details," *United States v. Obregon*, 893 F.2d 1307, 1311 (11th Cir. 1990).  Indeed, a defendant may "be found guilty of a conspiracy even if he plays only a minor role in the total scheme."  *Obregon*, 893 F.3d at 1311 (quotation marks omitted).    The evidence of a defendant's guilt can be circumstantial, "such as inferences from the conduct of the alleged participants or from circumstantial evidence of a scheme."  *United States v. Man*, 891 F.3d 1253, 1265 (11th Cir. 2018) (quotation marks omitted).  "But where the government relies on circumstantial evidence, reasonable inferences, and not mere speculation, must support the jury's verdict."  *Id.* (quotation marks omitted) (alteration adopted).

Cisneros argues that the evidence, even when viewed in the light most favorable to the government, shows at best the existence of a buyer-seller relationship, which is not sufficient to establish a conspiracy or Cisneros's participation in a conspiracy.  He otherwise asserts that the evidence connecting him to any drug conspiracy was weak and vague.

"A simple buyer-seller controlled substance transaction does not, by itself, form a conspiracy."  *United States v. Achey*, 943 F.3d 909, 917 (11th Cir. 2019).  But "a conspiracy can be found if the evidence allows an inference that the buyer and seller knew the drugs were for distribution instead of merely understanding their transactions to do no more than support the buyer's personal drug habit."  *Id.* (quotation marks omitted).  Thus, "an agreement to distribute drugs may be inferred

3

when the evidence shows a continuing relationship that results in the repeated transfer of illegal drugs," *United States v. Thompson*, 422 F.3d 1285, 1292 (11th Cir. 2005) (quotation marks omitted), or where the amount of drugs involved in a drug transaction "allows an inference of a conspiracy to distribute drugs," *Achey*, 943 F.3d at 917.

Here, a reasonable jury could conclude that Cisneros knowingly participated in a conspiracy to distribute controlled substances. DEA Special Agent Domingo Gonzales testified about the investigation of a drug-trafficking organization that was headed by Jose Martinez.[2] Martinez, in turn, testified—after pleading guilty—that he and Cisneros would buy drugs from each other. According to this testimony, within a three-month period, Cisneros sold methamphetamine to Martinez four times, with one of the purchases for one kilogram and the rest for one pound. Cisneros bought cocaine from Martinez three or four times, paying $29,000 per kilogram.

The amount of drugs involved supports an inference that the drugs were for distribution, not mere personal use. *See Achey*, 943 F.3d at 917. And the evidence "shows a continuing relationship that result[ed] in the repeated transfer of illegal

---

[2] In passing, Cisneros claims that the government offered an organizational chart of Martinez's drug-trafficking organization to create the "illusion" of a conspiracy. But Cisneros, who was not listed on the chart, did not object to the chart at trial, and he does not properly raise the matter on appeal. *See Sapuppo v. Allstate Floridian Ins. Co.*, 739 F.3d 678, 681 (11th Cir. 2014) (issues must be plainly and prominently raised on appeal).

drugs." *Thompson*, 422 F.3d at 1292.  From this testimony, a jury could reasonably infer an agreement between Cisneros and Martinez to distribute illegal drugs.

Moreover, a reasonable jury could have concluded that Cisneros and Martinez's joint drug-trafficking activities extended beyond these drug transactions. Martinez testified that Cisneros sometimes acted as a courier for him, transporting heroin and methamphetamine.  On one occasion, Martinez had Cisneros deliver a kilogram of methamphetamine to another individual.  Cisneros took the money and gave Martinez a share of the profits.  On another occasion, Cisneros offered to sell one of four kilograms of cocaine that Martinez was about to receive.  Martinez further testified that, another time, he sent Cisneros to check on possible DEA surveillance.  Cisneros reported back that he had looked around and it was all clear. A few days after that, Martinez and Cisneros discussed in a recorded conversation what happened with a load of drugs, and Martinez appeared to take Cisneros's word over that of another coconspirator.

Viewing this evidence in the light most favorable to the government, a reasonable jury could have concluded beyond a reasonable doubt that Cisneros knowingly conspired with Martinez to possess with intent to distribute illegal drugs. Accordingly, sufficient evidence supports Cisneros's conviction.  We affirm.

**AFFIRMED.**