[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 22-13660

Non-Argument Calendar

_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

*versus*

VINCENT VO TRAN,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Alabama
D.C. Docket No. 1:22-cr-00006-KD-MU-1

_____

Before JORDAN, JILL PRYOR, and LAGOA, Circuit Judges.

PER CURIAM:

A jury convicted Vincent Tran of conspiracy to distribute methamphetamine and possession with intent to distribute methamphetamine. For those crimes, the district court sentenced him to 150 months' imprisonment with five years of supervised release.

Tran now appeals his convictions and sentence. He argues that the district court erred when it denied his suppression motion, the evidence was insufficient to support his conspiracy conviction, and the district court erred when it imposed a sentence enhancement for methamphetamine importation.

We affirm Tran's convictions. The district court did not err when it denied his suppression motion. And sufficient evidence supported the jury's verdict on the conspiracy charge.

We vacate Tran's sentence and remand to the district court. The court erred when it imposed the importation enhancement because the government failed to prove, by a preponderance of the evidence, that Tran possessed imported methamphetamine.

## I.　　BACKGROUND

Tran raises three issues on appeal, related to the search of his residence and his suppression motion, the evidence at his trial and his acquittal motion, and the sentence he received and his sentence enhancement. We describe an earlier search of where Tran was living and then detail the facts relevant to each issue.

22-13660                 Opinion of the Court                 3

### A.    The First Search

In the spring of 2021, deputies of the Mobile County Sheriff's Office attempted to arrest Bailey Bostwick. But when deputies arrived in her neighborhood, she handed methamphetamine to her partner, Robert Draughon, and fled. The deputies captured Draughon and arrested him for trafficking methamphetamine.

Later that day, a deputy located Bostwick at Tran's Irvington residence in Mobile. When deputies arrived there looking for Bostwick, Tran sent her outside. The deputies arrested Bostwick and searched her vehicle.

That same day, deputy Raylene Busby of the Mobile County Sheriff's Office obtained a warrant to search Tran's Irvington residence. When deputies executed the warrant, they found marijuana and digital scales with methamphetamine residue. They arrested Tran for possession of a controlled substance and marijuana. Tran was incarcerated and then released in early fall. Upon his release, he lived with his girlfriend at a residence on Azalea Road.

### B.    The Second Search and Tran's Suppression Motion

In the fall of 2021, two months after Tran's release, Busby obtained a second warrant to search the Azalea Road residence in Mobile, where Tran was living. Busby obtained this warrant because a drug dealer she arrested told her that he bought more than a pound of methamphetamine from Tran.

To obtain the Azalea Road warrant, she drafted and submitted an affidavit, which alleged that cooperating defendants had

recently purchased marijuana and methamphetamine from Tran and seen firearms at his residence. The affidavit stated that cooperating defendants believed Tran had large amounts of methamphetamine delivered to his residence. And it noted that Tran was a target of federal and state drug investigations.

A state court judge issued the search warrant. When deputies, including Busby, executed the warrant, they discovered drugs and drug paraphernalia, including methamphetamine, cocaine, marijuana, a vacuum sealer, digital scales, and a glass pipe. The deputies then received and executed an arrest warrant. When they arrested Tran, they recovered approximately 26 grams of methamphetamine from his person.

A grand jury indicted Tran on one count of conspiracy to distribute methamphetamine, two counts of possession with intent to distribute methamphetamine, and one count of possessing a firearm in furtherance of a drug trafficking crime. Tran pleaded not guilty.

Before trial, Tran moved to suppress evidence seized from the Azalea Road residence. He argued the district court should suppress the evidence because a deficient affidavit supported the search warrant. Specifically, Tran asserted that the affiant, Busby, relied on others' statements rather than her personal knowledge, failed to mention where she executed a previous search warrant, and failed to disclose the number of cooperating defendants. Tran argued that, under the totality of the circumstances, the affidavit failed to establish the reliability, veracity, or basis of the cooperating

defendants' knowledge. He also maintained that the good-faith exception was inapplicable because the affidavit so lacked probable cause that no reasonable official would believe probable cause existed to support the search.

The district court held a suppression hearing, at which Busby testified. She described the events leading up to swearing the warrant affidavit, including her search of Tran's Irvington residence and her separate interviews with the cooperating defendants. She explained that she had known the cooperating defendants for years and "had a history with both of them," although she had used neither as an informant before. Doc. 92 at 56.[1] She included that information in her affidavit, detailing Tran's continuous involvement with drugs and noting other individuals who had identified Tran as their supplier.

Busby also testified that, after she submitted the affidavit, she learned that Tran made additional drug transactions. To secure the search warrant, she visited the state court judge's residence, presenting the affidavit and the additional information about Tran's recent drug activity. Busby believed the warrant "to be reasonable" and to contain "sufficient probable cause." *Id.* at 75.

The district court found the search warrant affidavit insufficient. It drew this conclusion based on the lack of corroboration of the cooperating defendants and the lack of evidence of their reliability. But the court found that the state court judge maintained his

---

[1] "Doc." numbers are the district court's docket entries.

neutral and detached role and that the affidavit contained some in-dicia of probable cause, rendering Busby's belief in the existence of probable cause reasonable. The district court therefore concluded that the officials relied in good faith on the search warrant. And because the officials relied in good faith on the warrant, the evidence was admissible. The district court denied the motion to suppress.

## C.    The Conspiracy Evidence and Tran's Acquittal Motion

At trial, the government attempted to demonstrate that Tran conspired with Bostwick, Draughon, and others to distribute methamphetamine. To prove this conspiracy, the government introduced drug distribution evidence it uncovered, Tran's statements and cell phone evidence, and evidence from alleged coconspirators.[2]

The government pointed to evidence uncovered during the searches and arrests to establish a conspiracy to distribute methamphetamine. The first search, for example, revealed digital scales with methamphetamine residue. The second search revealed even more: a bag of 18 grams of methamphetamine, a vacuum sealer, two digital scales, and a half pound of methamphetamine packaged in eight different containers. When deputies arrested Tran, they found 26 grams of methamphetamine on his person.

---

[2] We recount the evidence in the light most favorable to the jury's verdict because this is a sufficiency challenge.

The government also introduced Tran's statements and evidence found on his cell phone. Tran told police, after being read his *Miranda* rights, that he owned the 26 grams of methamphetamine they found on him and that he dealt drugs. The government uncovered text messages and photographs from Tran's phone as well. The messages discussed buying bags of drugs. The photographs depicted marijuana and a white substance. To explain the phone evidence, the government introduced testimony from Amber Westfall, a special agent with the Drug Enforcement Administration, whom the district court qualified as a drug trafficking expert. Westfall discussed the text messages and how drug dealers communicate. She admitted that Tran's text messages appeared to focus on marijuana.

In addition to the evidence uncovered from the search and arrest, Tran's statements, and evidence from Tran's phone, the government introduced evidence from and about Tran's alleged coconspirators. One of those coconspirators was Bostwick, who testified for the government. Bostwick admitted that she used methamphetamine with and purchased methamphetamine from Tran. She bought methamphetamine from Tran roughly once a week. She had been buying from Tran since March 2021 and had obtained between 10 and 20 ounces of methamphetamine from him, even though he was not her main source of methamphetamine. She said that she regularly distributed methamphetamine. And she testified that Tran supplied the methamphetamine she had handed to Draughon when she fled the police. Police found 160 grams of methamphetamine when they arrested Draughon.

Tran moved for a judgment of acquittal on the conspiracy count, which the district court denied. The jury found Tran guilty of conspiracy to distribute methamphetamine and possession with intent to distribute methamphetamine. Tran renewed his acquittal motion, and the district court denied it.

## D.    Tran's Sentencing

Before sentencing, a probation officer prepared a presentence investigation report. The probation officer recommended a two-level enhancement because the offense involved the importation of methamphetamine. The following evidence was introduced at trial regarding importation. Westfall, the DEA special agent and drug trafficking expert, testified that drug trafficking operations in Houston and Atlanta sourced the methamphetamine found in Mobile. According to Westfall, if the methamphetamine came from Houston, the drug was "smuggled directly from Mexico." Doc. 88 at 209. If it came from Atlanta, the drug was smuggled from Miami or Texas. And she testified that "super labs" in Mexico made methamphetamine with a purity level of "about 99 percent." *Id.* at 210–11. Based on her training and experience, Westfall said that methamphetamine located in Mobile with a 99 percent purity level "most likely originated from Mexico." *Id.* at 212. Tran previously had stipulated that the methamphetamine the police recovered had a purity level above 99 percent.

Tran objected to the enhancement, arguing that the government did not prove the factual basis for the importation enhancement by a preponderance of the evidence. He thought the

methamphetamine's purity failed to prove whether it was imported from Mexico and Westfall's testimony merely speculated that possibility.

The district court overruled Tran's objection, finding sufficient evidence to support the importation enhancement. It imposed the importation enhancement and sentenced Tran to 150 months' imprisonment, followed by five years of supervised release. Tran timely appealed.

## II.    STANDARDS OF REVIEW

We use "a mixed standard" to review a district court's denial of a suppression motion, reviewing for clear error the district court's factual findings and reviewing *de novo* "the application of law to those facts." *United States v. Pierre*, 825 F.3d 1183, 1191 (11th Cir. 2016). We "constru[e] the facts in the light most favorable to" the government, which is "the prevailing party below." *Id.* We review *de novo* "whether the good faith exception applies" but review for clear error "the underlying facts upon which that determination is based." *United States v. Morales*, 987 F.3d 966, 974 (11th Cir. 2021) (internal quotation marks omitted). "The government bears the burden of demonstrating that the good faith exception applies." *Id.*

We review sufficiency-of-the-evidence challenges *de novo*, considering the evidence in the light most favorable to the government and drawing all reasonable inferences and credibility choices in the government's favor. *United States v. Capers*, 708 F.3d 1286, 1296 (11th Cir. 2013). We may overturn a jury's verdict only if no

reasonable construction of the evidence would have allowed the jury to convict. *Id.* at 1297.

When looking at Tran's sentencing, we review the district court's factual findings for clear error and its application of the Sentencing Guidelines *de novo*. *United States v. Perez-Oliveros*, 479 F.3d 779, 783 (11th Cir. 2007). The government bears the burden of establishing, by a preponderance of the evidence, the facts necessary to support a sentencing enhancement. *Id.*

## III.    DISCUSSION

We organize our discussion around the three issues Tran raises on appeal.

### A.    Whether the District Court Erred in Denying Tran's Suppression Motion

The district court did not err when it denied Tran's suppression motion because the Fourth Amendment's good-faith exception to the exclusionary rule applies. The Fourth Amendment requires that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV. To deter Fourth Amendment violations, the Supreme Court created the exclusionary rule, which generally "preclude[es] the use of evidence obtained in violation of" the Fourth Amendment. *United States v. Leon*, 468 U.S. 897, 906 (1984).

The "judicially created [exclusionary] rule" has a "judicially created exception": the good-faith exception. *Davis v. United States*,

564 U.S. 229, 248 (2011). The good-faith exception renders the exclusionary rule inapplicable when police act "in objectively reasonable reliance on a subsequently invalidated search warrant." *Leon*, 468 U.S. at 922. The exception is unavailable when (1) the judge who issues a warrant is misled by false information; (2) the issuing judge abandons his neutral and detached role; (3) the affidavit lacks probable cause indicia, rending official belief in its existence unreasonable; or (4) the warrant is facially deficient, rendering official reliance on it unreasonable. *Id.* at 923. When the exception is available, it requires us to ask only "whether a reasonably well trained officer would have known that the search was illegal in light of all of the circumstances." *Herring v. United States*, 555 U.S. 135, 145 (2009) (internal quotation marks omitted).

Tran argues that the good-faith exception is inapplicable, stating that the issuing judge abandoned his neutral and detached role, and the affidavit lacked probable cause indicia. Both arguments fail.

The issuing judge, Tran argues, abandoned his neutral role because the information provided to him was insufficient to make an independent assessment of probable cause. But even if this information were insufficient, it does not mean that the issuing judge abandoned his neutral and detached role. *See United States v. Martin*, 297 F.3d 1308, 1318 (11th Cir. 2002) ("Just because the affidavit is later found to be lacking in probable cause does not mean the [issuing judge] served as a mere rubber stamp."). That is because when we analyze whether the issuing judge abandoned his neutral

and detached role, we rarely look to the affidavit itself. Rather, we analyze surrounding factors, such as whether the judge read the affidavit, whether he relied solely on his relationship with the affiant, or whether the affiant's identity interfered with the judge's independent review of the case's facts. *Id*. Tran has not argued, and the record does not reveal, any surrounding circumstances that cause us to question the issuing judge's neutrality and detachment.

We do, however, look to the affidavit to determine whether it lacks probable cause indicia. *United States v. Robinson*, 336 F.3d 1293, 1296 (11th Cir. 2003). To be lacking in probable cause indicia, the affidavit must "provide[] no hint as to why the police believed they would find incriminating evidence in the residence." *United States v. Morales*, 987 F.3d 966, 976 (11th Cir. 2021) (internal quotation marks omitted). The affidavit here provides many hints about why the police believed they would find illegal drugs in the Azalea Road residence. For example, the affiant spoke with cooperating defendants who stated that they purchased marijuana and methamphetamine from someone in the Azalea Road residence. The cooperating defendants also reported that they saw methamphetamine at the residence and being delivered to it.

True, the district court found that these statements failed to provide sufficient probable cause due to the lack of corroboration and reliability. But that does mean the affidavit provides no hints as to why the police thought they would uncover marijuana and methamphetamine at the Azalea Road residence. And, as detailed above, this affidavit provides those hints.

Because the good-faith exception is available, we must ask whether, considering all the circumstances, a reasonably well-trained officer would have known that the search was illegal. *See Herring*, 555 U.S. at 145. We conclude that a reasonably well-trained officer would not have known that the search was illegal. The affidavit contained the exact location to be searched and explained how the suspected drugs were connected to that place. And "we can look beyond the four corners of the affidavit and search warrant to determine whether [an officer] reasonably relied upon the warrant." *Martin*, 297 F.3d at 1318.

When we look beyond the affidavit at the totality of the circumstances, we conclude that Busby reasonably believed that probable cause existed when she executed the warrant. She learned from a cooperating defendant that Tran sold him methamphetamine and lived at the Azalea Road residence. Another cooperating defendant told her that Tran had large amounts of methamphetamine and marijuana, and Busby had reviewed emails between a cooperating defendant and Tran. She knew about other investigations into Tran's suspected drug activity. On these facts, a well-trained officer with Busby's knowledge would not have known that the search was illegal. The district court therefore did not err when it applied the good-faith exception and denied Tran's suppression motion.

**B.    Whether the Evidence Was Sufficient to Support Tran's Conspiracy Conviction**

The evidence was sufficient to support Tran's conspiracy conviction. To sustain a conspiracy conviction, the government had to prove beyond a reasonable doubt that Tran and at least one other person agreed to commit a drug-related offense, that Tran knew of the conspiracy, and that he agreed to become a member. *United States v. Louis*, 861 F.3d 1330, 1333 (11th Cir. 2017) (citing 21 U.S.C. §§ 841, 846). In his brief, Tran appears to contest only the first element, whether an "agreement exist[ed] between two or more person to achieve an unlawful objective." *United States v. Achey*, 943 F.3d 909, 916 (11th Cir. 2019) (internal quotation marks omitted). He argues that the government failed to prove an agreement because the text messages introduced concern marijuana, not methamphetamine. And he states that the government failed because Tran's relationship with Bostwick was a buyer-seller relationship, which "does not, by itself, form a conspiracy." *Id.* at 917. Each argument fails.

First, Tran argues that the text messages "fail to provide sufficient evidence of a methamphetamine conspiracy." Appellant's Br. 40. Two issues exist with this argument. The first is that sufficient evidence exists for the conspiracy conviction even without the text messages. As discussed below, the frequency of methamphetamine sales, volume of methamphetamine sold, and circumstantial evidence provide sufficient evidence for Tran's conspiracy conviction. The second issue is that the text messages' focus on marijuana fails to undermine the methamphetamine conviction. In

fact, it may even bolster the conviction. Westfall testified that it was common for individuals engaged in the trafficking of methamphetamine to sell other drugs as well. Tran's text message argument therefore fails.

Second, Tran argues that he and Bostwick "shared no more than a buyer/seller relationship." *Id.* at 49. But here, sufficient evidence existed for the jury to believe that Tran "knew the drugs were for distribution" rather than Bostwick's "personal drug habit." *Achey*, 943 F.3d at 917 (internal quotation marks omitted). Specifically, the frequency of methamphetamine sales, volume of methamphetamine sold, and circumstantial evidence of a methamphetamine conspiracy were sufficient evidence to prove the agreement.

On frequency, we have held that an "agreement may be inferred when the evidence shows a continuing relationship that results in the repeated transfer of illegal drugs to the purchaser." *United States v. Mercer*, 165 F.3d 1331, 1335 (11th Cir. 1999). The government presented to the jury evidence of a continuing relationship. Bostwick admitted to buying methamphetamine from Tran roughly once a week since March 2021. That exceeds the frequency we have found sufficient in past cases. *See, e.g., United States v. Beasley*, 2 F.3d 1551, 1560 (11th Cir. 1993) (concluding that evidence established "far more than merely a buyer-seller relationship" in part because the buyer "purchased [illegal drugs] from [the seller] on several occasions" over a month).

On volume, we have held that a "conspiracy to distribute controlled substances may also be inferred from a drug transaction where the amount of drugs allows an inference of a conspiracy to distribute drugs." *Achey*, 943 F.3d at 917. The government presented evidence that Tran sold and moved large quantities of methamphetamine. Bostwick, for example, testified that she obtained between 10 and 20 ounces of methamphetamine from Tran. And the methamphetamine Tran provided to her shortly before her arrest weighed over 160 grams, or 5.6 ounces. These large amounts of methamphetamine allowed to jury to infer an agreement.

On circumstantial evidence, we have held that the existence of a conspiracy agreement may be proved "from the conduct of the alleged participants or from circumstantial evidence of a scheme." *United States v. Wenxia Man*, 891 F.3d 1253, 1265 (11th Cir. 2018) (internal quotation marks omitted). Alleged participant Bostwick testified that she distributed methamphetamine regularly. The government introduced physical evidence that allowed the jury to infer that Tran was involved in a scheme. When officers searched Tran's home, they uncovered multiple sets of scales, some with methamphetamine residue on them. They also found a bag of 18 grams of methamphetamine, a vacuum sealer, and a half pound of methamphetamine packaged in eight different packages. Bostwick's admission and the physical evidence could lead a jury to infer an agreement.

Because the evidence sufficiently supported the conspiracy conviction, the district court did not err when it denied Tran's acquittal motion.

## C.     Whether the District Court Erred in Imposing the Importation Sentence Enhancement

The district court erred when it overruled Tran's objection and imposed a two-level enhancement for importing methamphetamine. The Sentencing Guidelines instruct a court to impose a two-level enhancement if among other things "the offense involved the importation of . . . methamphetamine or the manufacture of . . . methamphetamine from listed chemicals that the defendant knew were imported unlawfully." U.S. Sent'g Guidelines Manual § 2D1.1(b)(5).

The government had to prove, by a preponderance of the evidence, that a factual basis existed for this sentencing enhancement. *See United States v. Perez-Oliveros*, 479 F.3d at 783. A district court cannot "speculate concerning the existence of a fact which would permit a more severe sentence under the guidelines." *United States v. Cataldo*, 171 F.3d 1316, 1321–22 (11th Cir. 1999) (internal quotation marks omitted). A court, instead, must base its factual findings "on reliable and specific evidence." *United States v. Newman*, 614 F.3d 1232, 1238 (11th Cir. 2010).

Here, the government failed to produce reliable and specific evidence to support the importation enhancement. The government, and the district court, relied exclusively on Westfall's testimony that methamphetamine in Mobile with a purity level of 99

percent or higher "most likely originated from Mexico." Doc. 88 at 212. But Westfall failed to provide reliable and specific evidence that the methamphetamine Tran possessed came from Mexico. She testified that most methamphetamine in Mobile came from Houston or Atlanta. The methamphetamine from Houston was "smuggled directly from Mexico" and the methamphetamine from Atlanta came from Miami or Texas. Tran's methamphetamine could have come from any of those places: Miami, Texas, or Mexico. Thus, it was speculative to conclude that Tran's methamphetamine came from Mexico.

The government cites one unpublished case to support the district court's determination. Appellee's Br. 27 (citing *United States v. Rivera-Fernandez*, No. 19-12990, 2021 WL 6144162 (11th Cir. Dec. 30, 2021) (unpublished)). But even in that case, the government provided more than just an agent's testimony about where the drugs may or may not have originated. In addition to a Drug Enforcement Administration report like the agent's testimony here, the government in that case "provided the district court with messages between the methamphetamine supplier in Mexico and a co-defendant" and "submitted an additional conversation between the supplier and an undercover agent." *Rivera-Fernandez*, 2021 WL 6144162, at *3. But here, the government has provided nothing further. Because the government failed to provide reliable and specific evidence supporting that the methamphetamine recovered from Tran originated in Mexico, the district court erred when it imposed the importation enhancement.

## IV.    CONCLUSION

For the reasons given above, we affirm Tran's convictions, vacate the district court's sentence, and remand for resentencing.

**AFFIRMED    IN    PART;    VACATED    IN    PART; REMANDED.**