**NOT FOR PUBLICATION**

In the

United States Court of Appeals

For the Eleventh Circuit

_____

No. 24-12126
Non-Argument Calendar

_____

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*versus*

FREDERICK ANTHONY FORBES,

*Defendant-Appellant.*

_____

Appeal from the United States District Court
for the Northern District of Florida
D.C. Docket No. 1:22-cr-00029-AW-MAL-1

_____

Before LAGOA, ED CARNES, and WILSON, Circuit Judges.

PER CURIAM:

A jury found Frederick Forbes guilty of possessing with the intent to distribute 500 grams or more but less than 5 kilograms of a mixture and substance containing cocaine, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B)(ii), and of conspiracy to distribute that amount of cocaine, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(B)(ii), and 846. He was sentenced to 168 months imprisonment to be followed by 10 years of supervised release.

Forbes challenges his convictions on two grounds and his sentence on four grounds. Neither of his challenges succeeds.

## I.    The Convictions

### A. Admission of Agent Grasso's Testimony

During the investigation in this case, phone calls between Forbes and others were intercepted and recorded. Some of the recordings were played at trial. Agent Grasso testified about them, telling the jury, among other things, that some of what was being said in the conversations was coded language relating to drug transactions and what that coded language actually meant. Forbes contends that the district court abused its discretion by allowing, over his objection, that testimony.

Here are the particulars. The government asked Agent Grasso whether, based on monitoring the calls and her investigation, she believed that some of the language used in the calls might be coded. Forbes objected based on lack of foundation. The district

court overruled that objection, telling counsel in a sidebar that the agent had listened to all the tapes and knew "what they are doing and what they are not doing."

After the court overruled Forbes' objection, the government asked Agent Grasso about particular terms that were used during the conversations. She testified that Forbes' question to his codefendant Michael Sheppard about whether he "had a chance to go out on that date yet" (even though they had not discussed relationships or dates in any earlier communications) was coded language. She told the jury that the use of terms such as "22nd Avenue" and "Michael Jordan['s] number" (23) were coded language referring to prices. She also testified that "a cumulative review of these calls in this investigation" led her to determine that references to "appointments" referred to drugs. Her testimony was based on Agent Grasso's 20 years of experience at the DEA and her investigation of this particular case.

Forbes argues here, as he did in the district court, that there was an inadequate foundation for Agent Grasso's testimony about the use of coded terms. We review the district court's ruling on this issue only for abuse of discretion. *See United States v. Jeri*, 869 F.3d 1247, 1265 (11th Cir. 2017). Federal Rule of Evidence 602 provides that "[a] witness may testify to a matter only if evidence is introduced sufficient to support a finding that the witness has personal knowledge" of it. Fed. R. Evid. 602. And "the witness's own testimony" may establish personal knowledge. *Id.*

There was a firm foundation for Agent Grasso's testimony. Not only did she have two decades of experience as a DEA agent, she was one of the investigating officers on the case and had personally reviewed the transcripts of all the intercepted phone calls. The district court did not abuse its discretion by overruling Forbes' lack of foundation objection.

Forbes also argues for the first time on appeal that the court erred by allowing Agent Grasso to testify, in effect, as an expert witness even though she had not been qualified as one. Because Forbes didn't object on this ground in the district court, our review is for plain error only. *See United States v. Turner*, 474 F.3d 1265, 1275 (11th Cir. 2007). To establish plain error, Forbes must show "that the district court made an error, that the error was plain, and that it affected his substantial rights." *United States v. Iriele*, 977 F.3d 1155, 1177 (11th Cir. 2020). "If he carries that burden, we have discretion to reverse — but only if the error seriously affects the fairness, integrity, or public reputation of judicial proceedings." *Id.*

The Federal Rules of Evidence distinguish between expert and lay opinion testimony. Expert opinion is based on "scientific, technical, or other specialized knowledge." Fed. R. Evid. 702(a). Expert witnesses must be properly "qualified," and their opinions are admissible only if certain reliability requirements are met. *See* Fed. R. Evid. 702. Lay opinion testimony, by contrast, may not be "based on scientific, technical, or other specialized knowledge within the scope of Rule 702." Fed. R. Evid. 701. It must be "rationally based on the witness's perception," as well as being

"helpful to clearly understanding the witness's testimony or to determining a fact in issue." *Id.*

Professional experience is not off limits as a basis for lay opinion testimony. A lay witness may offer testimony based on her professional experience if the testimony "is rationally based on" that experience, instead of being based "on scientific or technical knowledge." *United States v. Williams*, 865 F.3d 1328, 1341 (11th Cir. 2017) (quotation marks omitted). For example, we have held that coast guard officers properly offered lay opinion testimony that the objects they had seen thrown overboard from a boat "resembled cocaine bales found in previous drug interdictions." *Id.* And we've held that an agent's testimony about the use of code words was properly admitted as lay testimony when he based his opinion on "what he learned during this particular investigation, and he testified that he interpreted code words based on their context." *United States v. Jayyousi*, 657 F.3d 1085, 1104 (11th Cir. 2011).

The district court did not err, much less plainly err, in allowing Agent Grasso to testify as a lay witness about her understanding of the coded use of language in the intercepted phone conversations. Her testimony was not based on scientific or technical knowledge. Instead, it was based on her personal knowledge and experience gained as an investigator in this case who had reviewed the intercepted communications and reached conclusions about what the participants were discussing. *See id.* She testified that she had "reviewed all the calls in this investigation." And she testified that she paid attention to "who the individuals are, what they're

6                    Opinion of the Court                    24-12126

discussing, how they're discussing it, the change in their voice, the
tone of their voice," and "what other calls have taken place prior
to that call." The district court did not plainly err in allowing her
testimony about "what [s]he learned during this particular investi-
gation" and about how she "interpreted code words based on their
context" and her personal knowledge and experience. *Jayyousi*, 657
F.3d at 1104.

### B. Denial of the Motion for Acquittal or New Trial

Forbes also challenges the denial of his motion for judgment
of acquittal or alternatively for a new trial. He contends that the
evidence was insufficient to convict him of possession with intent
to distribute cocaine and conspiracy to distribute it.

We review *de novo* the sufficiency of the evidence to support
Forbes' convictions, "viewing the evidence in the light most favor-
able to the verdict and drawing all reasonable inferences and cred-
ibility choices in the verdict's favor." *United States v. Godwin*, 765
F.3d 1306, 1319 (11th Cir. 2014) (quotation marks omitted). We will
not overturn the jury's verdict if there is any reasonable construc-
tion of the evidence that would have allowed a jury to find the de-
fendant guilty beyond a reasonable doubt. *See id.* at 1319–20. We
review only for an abuse of discretion a district court's denial of a
new trial. *United States v. Cox*, 995 F.2d 1041, 1044 (11th Cir. 1993).

### 1. The Sufficiency of the Evidence that Forbes Possessed Cocaine with the Intent to Distribute It

For Forbes' conviction under 21 U.S.C. § 841(a)(1), the gov-
ernment had to prove that he knowingly possessed a controlled

substance and intended to distribute it. *United States v. Woodard*, 531 F.3d 1352, 1360 (11th Cir. 2008). Intent to distribute may be inferred from the quantity of drugs seized. *United States v. Hernandez*, 433 F.3d 1328, 1333 (11th Cir. 2005). And we have recognized that "[a] reasonable jury could infer from the quantity of drugs seized that a 'prudent smuggler' is not likely to entrust such valuable cargo to an innocent person without that person's knowledge." *United States v. Quilca-Carpio*, 118 F.3d 719, 722 (11th Cir. 1997).

Possession of the drugs may be actual or constructive. *Hernandez*, 433 F.3d at 1333. A defendant constructively possesses a controlled substance if he has "ownership, dominion, or control" over the drugs or "over the premises or vehicle" where they are concealed. *Id.*

During a traffic stop officers seized two kilograms of cocaine that they found in a storage compartment behind the passenger seat in Forbes' tractor-trailer truck. The evidence at trial established that on September 19, 2022, Forbes spoke with Sheldon Carey, one of his codefendants who would later plead guilty. Forbes told Carey that he wanted to purchase truck "parts." The next day Forbes talked to Carey again and asked about the "rates" for the parts. Carey responded "22nd Avenue," which Forbes himself testified was "lingo" for a price of $2,200, although he told the jury it was for truck parts, not drugs. The day after that, Forbes met with Carey, who picked him up near a Walmart. When Carey dropped him off and he got back into his truck, Forbes had a brown paper bag.

On September 22, the day after Forbes' meeting with Carey, officers stopped Forbes while he was driving his truck, and they found in it two kilograms of cocaine packaged in plastic. Carey's fingerprint was on one of the packages of cocaine found in Forbes' truck. No truck parts were found anywhere in the truck.

Challenging the jury's verdict against him, Forbes points to his trial testimony that he didn't know the cocaine was in his truck. He admits that he met with Carey the day before the cocaine was seized, that officers conducting surveillance saw Carey give him a bag, and that Carey's fingerprint was on one of the packages of cocaine that the officers seized. But he argues that after he met with Carey, his truck was parked in Miami overnight, and anyone could have put two kilos of cocaine in there without his knowledge.

The jury was free to make a credibility determination and reject Forbes' position that he did not know the cocaine was in his truck. *See United States v. Peters*, 403 F.3d 1263, 1268 (11th Cir. 2005) ("[W]e are bound by the jury's credibility determinations, and by its rejection of the inferences raised by the defendant."). The jury did not believe Forbes' "innocent explanations" for his statements and conduct. *See Hernandez*, 433 F.3d at 1334. And there's no good reason it should have.

The evidence established that Forbes had ownership, dominion, and control over his truck, where the cocaine was seized, and over the cocaine, which was located in a storage compartment behind the passenger seat of the truck. *See id.* at 1333. Forbes owned the truck, was driving it, and was the only person in it when

officers stopped it. And the jury could infer from the large quantity of drugs seized "that a 'prudent smuggler'" would not have entrusted "such valuable cargo to an innocent person without that person's knowledge." *Quilca-Carpio*, 118 F.3d at 722. Based on the amount of cocaine Forbes had in his truck, the jury could also reasonably infer his intent to distribute it. *See Hernandez*, 433 F.3d at 1333 (holding that evidence of two kilograms of cocaine was sufficient to support the jury's finding of the defendant's intent to distribute the drugs).

Ample evidence supports the jury's finding that Forbes was guilty of knowingly possessing the cocaine with the intent to distribute it. The district court did not err by denying Forbes' motion for a judgment of acquittal on that count nor did it abuse its discretion by denying him a new trial.

2. The Sufficiency of the Evidence that Forbes Conspired To Possess Cocaine with the Intent to Distribute It

Forbes also challenges the sufficiency of the evidence to support his conviction under 21 U.S.C. §§ 841(a)(1) and 846 for knowingly and willfully conspiring with codefendant Michael Sheppard and others to possess with intent to distribute a controlled substance, namely a mixture and substance containing a detectable amount of cocaine. To convict him of that crime, the government was required to prove (1) an illegal agreement existed to possess with intent to distribute cocaine; (2) Forbes knew of the agreement; and (3) he knowingly and voluntarily joined it. *See United States v. Charles*, 313 F.3d 1278, 1284 (11th Cir. 2002).

The evidence must show more than "a simple buyer-seller controlled substance transaction" that "support[s] the buyer's personal drug habit." *United States v. Achey*, 943 F.3d 909, 917 (11th Cir. 2019). Evidence that "allows an inference that the buyer and seller knew the drugs were for distribution" is enough to support a conspiracy conviction. *Id.* And the existence of a conspiracy may be inferred "when the evidence shows a continuing relationship that results in the repeated transfer of illegal drugs to the purchaser" or "from a drug transaction where the amount of drugs allows an inference of a conspiracy to distribute drugs." *Id.* (quotation marks omitted). The government does not have to prove that all of the members knew every detail or participated in every stage of the conspiracy; it is enough that they knew its essential nature. *United States v. Morel*, 63 F.4th 913, 919 (11th Cir. 2023).

Forbes argues that the government proved only a series of buyer-seller relationships that were unrelated to each other. He argues that there was no evidence of a "common design or purpose" to distribute cocaine. Forbes describes himself as a middleman who would "shop around" to get the best price for drugs to increase his profit when he resold them. He points out that the cocaine seized from his truck appeared to be packaged differently from the cocaine that was seized from his co-defendant Sheppard's apartment. And he points to the seizure at Sheppard's apartment of an open partial kilo of cocaine that the government didn't argue came from Forbes. That shows, according to Forbes, that he and Sheppard both had other suppliers.

Even if they did have other suppliers, that doesn't negate the evidence presented of Sheppard's and Forbes' ongoing drug transactions. *See Achey*, 943 F.3d at 917. The government presented surveillance and wiretap evidence establishing multiple meetings and phone calls between the two of them during April 2022. An officer who conducted aerial surveillance in June 2022 testified that he saw "a brown satchel of some sort" taken out of Forbes' vehicle and put into Sheppard's vehicle. An officer conducting surveillance on the ground on that same day testified that Sheppard took a brown bag up to his apartment.

The evidence showed that in July of 2022, Forbes travelled to meet with Sheppard in the early morning hours. Sheppard went to a self-storage center at about 3:00 a.m. and returned to his apartment fifteen minutes later. An officer conducting surveillance near Sheppard's apartment saw Sheppard's car arrive and then saw Forbes' minivan arrive. The officer saw Sheppard go to his apartment and later return carrying a "handbag." Soon after that, the officer saw Sheppard walking back up to his apartment, and he appeared to be clutching some object near his abdomen, but it was not the bag he previously had been carrying. Soon after that, Sheppard left his apartment again and returned to where his and Forbes' vehicles were parked next to each other, and he did not appear to be carrying anything.

Two days later, having obtained warrants, officers searched Sheppard's apartment and his ministorage unit. In the apartment, they found $2,000 in cash under the mattress and an open safe with

cocaine and other drugs inside it.  One package of cocaine in the safe had been opened, and another was unopened and in a heat-sealed bag.  In Sheppard's ministorage unit, they found $16,000, a pistol, an AR-style rifle, and jewelry.

At trial the content of the wiretaps that the government presented was powerful evidence that Forbes conspired with Sheppard and others to distribute cocaine.  We have already recounted Agent Grasso's testimony about the use of coded language about drug activities and transactions in the conversations captured by the wiretaps. *See supra* at 2–6.  In his own testimony, Forbes admitted that he was using coded language, but tried to persuade the jury that he was referring to truck parts that are used to bypass pollution controls.  He admitted that references to "Michael Jordan," who wore jersey number 23, did refer to an amount, but insisted it was prices for truck parts, not drugs.  He said the same thing about "22nd Avenue," explaining that it was "lingo" for the $2,200 price of truck parts.  And "appointments," according to Forbes, referred to "the amount of vehicles" that are "involved in the job," not drug deals.  The jury was free to reject Forbes' testimony as not credible, *see Peters*, 403 F.3d at 1268, and to find instead that Forbes had been talking about distributing drugs. As it obviously did.

The government also presented testimony from a fellow inmate who told the jury that Forbes had admitted to him using coded language, such as "appointments" for kilograms.  He mentioned that one of his "appointments" was cancelled, so he had only

two kilograms instead of three when his truck was stopped by law enforcement.

Another fellow inmate testified that Forbes told him that he had traveled from Atlanta to Miami to pick up a couple of kilograms of cocaine for someone who lived in Atlanta. He said that someone had ordered three kilograms, but one of the "appointments" got cancelled, so he picked up only two. Forbes also told him that he sold cocaine to Sheppard on a regular basis. "Evidence of prior drug dealings is highly probative of intent to distribute a controlled substance, as well as involvement in a conspiracy." *United States v. Barron-Soto*, 820 F.3d 409, 417 (11th Cir. 2016) (quotation marks omitted).

Forbes argues that because none of the people who sold him cocaine knew what he did with it, there was no evidence of an agreement to engage in drug distribution. He relies on *United States v. Mercer*, 165 F.3d 1331, 1336 (11th Cir. 1999), where we held that the evidence was insufficient to support the defendant's drug conspiracy conviction without any proof of "a common design or purpose to join [the defendant] with anyone other than government agents." *Id.* at 1336. In *Mercer* there was merely evidence that the defendant "sold drugs and that he had sources from which he could get drugs, that [he] had a source for drugs and if that source failed he would 'go somewhere else,' that he bought quantities of cocaine from some unknown source and sold it to police agents presumably at a profit." *Id.*

The evidence in the present case, by contrast, establishes a common or shared design or purpose to purchase kilograms of cocaine and distribute those drugs. The jury heard evidence of intercepted phone calls using coded language to refer to amounts of cocaine and money, of meetings between Sheppard and Forbes, of the cocaine and cash that officers found in their search of Sheppard's apartment, of the large amount of cash in his storage unit, and of the seizure of two kilograms of cocaine in Forbes' truck with one of his codefendant's fingerprints on the package containing it. Based on all of that evidence, a reasonable jury could find, as this one did, that Forbes had a conspiratorial agreement with Sheppard and others to possess with intent to distribute large amounts of cocaine. The district court did not err in denying Forbes' motion for a judgment of acquittal on conspiracy to possess cocaine with the intent to distribute it, nor did the court abuse its discretion in denying a new trial on that count.

## II. The Sentence

Forbes challenges his sentence. We review *de novo* the district court's interpretation and application of the sentencing guidelines. *United States v. Dupree*, 57 F.4th 1269, 1272 (11th Cir. 2023) (en banc). We review the court's factual findings for clear error. *United States v. Carillo-Ayala*, 713 F.3d 82, 87 (11th Cir. 2013).

### A. The Enhancement for Possessing a Firearm In Connection with a Drug Offense

Forbes contends that he should not have received a two-level enhancement for possessing a firearm *in connection* with

a drug offense because he was acquitted of a charge under 18 U.S.C. § 924(c) for possessing a firearm *in furtherance* of a drug offense.

As a defendant convicted of possession with intent to distribute a controlled substance, Forbes was subject to a two-level enhancement because a specific characteristic of his offense included that "a dangerous weapon (including a firearm) was possessed." U.S.S.G. § 2D1.1(b)(1). The guidelines' commentary explains that the enhancement "reflects the increased danger of violence when drug traffickers possess weapons." *Id.* cmt. n.11(A). It specifies that "[t]he enhancement should be applied if the weapon was present, unless it is *clearly improbable* that the weapon was *connected with* the offense." *Id.* (emphasis added).

In seeking the two-level sentence enhancement under § 2D1.1(b)(1), the government had the initial burden to show by a preponderance of the evidence that a firearm was present when Forbes committed his drug trafficking offense and that its presence was not a mere accident or coincidence. *See United States v. George*, 872 F.3d 1197, 1204 (11th Cir. 2017). The burden then shifted to Forbes to show that it was "clearly improbable that the weapon was connected with" his drug trafficking offense. *Carillo-Ayala*, 713 F.3d at 90. We have recognized that a firearm's close proximity to drugs or drug-related items can establish the required connection because the weapon is available to be used to facilitate the drug offense. *See id.* at 92 (noting that "there is a strong presumption that a defendant aware of the weapon's presence will think of using it if his illegal activities are threatened").

We have recognized that "[a] *'connection'* is shown by less evidentiary proof than is required to show possession *'in furtherance of'* a drug offense." *Carillo-Ayala*, 713 F.3d at 96 (emphasis added); *see also United States v. Timmons*, 283 F.3d 1246, 1253 (11th Cir. 2002) (holding that "the presence of a gun within the defendant's dominion and control during a drug trafficking offense" was not enough to establish that the weapon was possessed in "furtherance" of the crime).

The fact that Forbes was acquitted of the charge of possessing a firearm in furtherance of a drug trafficking offense doesn't mean that the government did not establish by a preponderance of the evidence that he possessed a firearm in connection with a drug trafficking offense. *See Carillo-Ayala*, 713 F.3d at 96; *cf. United States v. George*, 872 F.3d 1197, 1205 (11th Cir. 2017) (holding that the defendant's acquittal on a firearm possession charge did not "negate the application of a sentencing enhancement based on identical evidence because at sentencing, the government need only prove the applicability of the enhancement by a preponderance of the evidence, rather than beyond a reasonable doubt"). At the time Forbes was sentenced, our precedent established that "sentencing courts may consider both uncharged and acquitted conduct in determining the appropriate sentence." *United States v. Rushin*, 844 F.3d 933, 942 (11th Cir. 2016) (quotation marks omitted). [1]

---

[1] Forbes was sentenced on June 25, 2024, under the 2023 guidelines. In November 2024, Amendment 826 to the Sentencing Guidelines went into effect. *See* U.S. Sentencing Commission, *Adopted Amendments* (Effective

The district court did not clearly err in finding that Forbes "possessed" a firearm for purposes of the § 2D1.1(b)(1) enhancement. The firearm was found in close proximity to the two kilograms of cocaine in Forbes' truck. Although Forbes' girlfriend testified that she had inadvertently left her firearm in his truck, the court found that her testimony was not credible. The government presented evidence of an intercepted phone call where Forbes said he had been carrying a firearm in his truck since January. And two witnesses at trial testified that Forbes told them he carried the firearm for protection.

---

November 1, 2024). That amendment added a subsection to U.S.S.G. §1B1.3 called "Acquitted Conduct," and it provides that "[r]elevant conduct does not include conduct for which the defendant was criminally charged and acquitted in federal court, unless such conduct also establishes, in whole or in part, the instant offense of conviction." *See id.* The Sentencing Commission did not include that amendment as one that was intended to have retroactive application. *See* U.S.S.G. § 1B1.10(d).

When we review on direct appeal the district court's application of the sentencing guidelines, we apply the version of the guidelines in effect on the date of the sentencing hearing. *United States v. Jerchower*, 631 F.3d 1181, 1184 (11th Cir. 2011). We will consider clarifying amendments to the guidelines made after the date of sentencing but will not review substantive changes to the guidelines or apply them retroactively. *Id.* Forbes has not argued that Amendment 826 is merely clarifying, and we seriously doubt that it is. *See id.* at 1185. In any event, we need not decide that issue because as the district court correctly recognized, "the enhancement for possessing the gun in connection with this offense doesn't require the same facts that a conviction under 924(c) would."

The record supports the district court's finding that Forbes possessed the firearm while possessing cocaine with the intent to distribute it. And Forbes failed to show that it was "clearly improbable that the weapon was connected with" his drug trafficking offense. *Carillo-Ayala*, 713 F.3d at 90. The district court properly applied the two-level enhancement to his base offense level under § 2D1.1(b)(1).

### B. Denial of a Zero-Point Offender Reduction

Forbes contends that that he should have received "a zero-point offender" reduction to his offense level given his acquittal on the 18 U.S.C. § 924(c) charge. Because the court correctly found under U.S.S.G. § 2D1.1(b)(1) that Forbes possessed a firearm in connection with his drug trafficking offense, the court did not err in refusing to apply a zero-point offender reduction.

Amendment 821 to the sentencing guidelines was in effect when Forbes was sentenced in June 2024. *See* U.S. Sentencing Commission, Adopted Amendments (Effective November 1, 2023). The amended guideline contained a new section, U.S.S.G. § 4C1.1 (2023), titled "Adjustment for Certain Zero-Point Offenders," which provides for a two-level decrease in a defendant's offense level if the defendant has zero criminal history points and satisfies ten other requirements. *Id.* One of those requirements is that "the defendant *did not possess*, receive, purchase, transport, transfer, sell, or otherwise dispose of *a firearm* or other dangerous weapon (or induce another participant to do so) *in connection with the offense*." U.S.S.G. § 4C1.1(a)(7) (emphasis added). Forbes did. *See*

*supra* at 14–18.  So he was not entitled to the reduction. The district court properly denied the requested two-level reduction.

C.  The Substantive Reasonableness of the Sentence

Forbes challenges the substantive reasonableness of his sentence.  He contends that the district court gave too much weight to the likelihood that he would reoffend and didn't consider his lack of criminal history.

Forbes' guidelines range was 97 to 121 months imprisonment.  He was subject to a five-year mandatory minimum and a 40-year statutory maximum.  The district court considered the 18 U.S.C. § 3353(a) factors and varied upward from the high end of Forbes' guidelines range, imposing a sentence of 168 months.

The court found that Forbes was accountable for three kilograms of cocaine, the two found in his truck plus another one that he had delivered to codefendant Sheppard at an earlier date.  The court determined that Forbes had played a "knowing, active and sophisticated part" in the drug trafficking conspiracy.  He had employed "old-school sophistication" by hiding the drugs, meeting with coconspirators in places that were difficult to surveil, concealing the drugs when he was in public, and "being extremely diligent in using coded language in every phone call he made." That strategy, the court explained, enabled Forbes to take the stand and "bold-facedly claim to the jury that he was talking about truck parts that he couldn't define and couldn't really give any information about."  And the way Forbes spoke on the wiretapped calls revealed "the depth of his experience as a drug trafficker."

The court focused on that fact that Forbes had "lied throughout his testimony." He lied about using coded language to talk about drugs and about transporting them from one place to another. The court also found that he had "shown no remorse."

The court explained that an upward variance was justified because there was a "significant risk of recidivism." Forbes was involved in a conspiracy that included "a lot of people" who "mov[ed] a lot of drugs" and brought those drugs "into new communities." The court described Forbes as "somebody who really knows what he's doing in a way that allows him to evade detection, and here he's still trying to kind of talk his way out of it by saying things that aren't true, and this speaks to the likelihood that he will re-offend." As a result, the court determined that an upward variance was necessary for specific deterrence. It also considered the need for general deterrence because of the dangers and problems of drugs coming into communities. And it described the way Forbes had lied at trial was "really quite egregious." The court also considered the seriousness of the offense and the lack of mitigation. All of that, the court concluded, justified an upward variance.

We review the substantive reasonableness of a sentence under a deferential abuse-of-discretion standard considering the totality of the circumstances. *Gall v. United States*, 552 U.S. 38, 51 (2007). We will vacate a sentence as substantively unreasonable "if, but only if, we are left with the definite and firm conviction that the district court committed a clear error of judgment in weighing the § 3553(a) factors by arriving at a sentence that lies outside the range

of reasonable sentences dictated by the facts of the case." *United States v. Irey*, 612 F.3d 1160, 1190 (11th Cir. 2010) (en banc) (quotation marks omitted). We will not "set aside a sentence merely because we would have decided that another one is more appropriate." *Id.* at 1191. We are not permitted to substitute our own judgment for the district court's and will affirm "so long as the court's decision was in the ballpark of permissible outcomes." *United States v. Butler*, 39 F.4th 1349, 1355 (11th Cir. 2022) (quotation marks omitted). As the party challenging the sentence, Forbes bears the burden of proving it is unreasonable. *See United States v. Boone*, 97 F.4th 1331, 1338–39 (11th Cir. 2024).

In judging the reasonableness of a sentence, we keep in mind these basic principles. The district court must impose a sentence that is sufficient, but not greater than necessary, to reflect the seriousness of the offense, to promote respect for the law, to provide just punishment for the offense, to afford adequate deterrence, and to protect the public from further crimes of the defendant. 18 U.S.C. § 3553(a). In addition, the court must consider, among other factors, the nature and circumstances of the offense, the history and characteristics of the defendant, and the need to avoid unwarranted sentence disparities among similarly situated defendants. *Id.* The court imposes a substantively unreasonable sentence when it "(1) fails to afford consideration to relevant factors that were due significant weight, (2) gives significant weight to an improper or irrelevant factor, or (3) commits a clear error of judgment in considering the proper factors." *Butler*, 39 F.4th at 1355 (quotation marks omitted).

Although the district court is required to consider all relevant § 3553(a) factors, "the weight given to each factor is committed to [its] sound discretion," and the court may attach great weight to one factor over the others. *Id.* The court does not have to explicitly state on the record that it has considered all of the factors or expressly discuss each of them. *United States v. Ortiz-Delgado*, 451 F.3d 752, 758 (11th Cir. 2006).

In imposing Forbes' sentence, the district court adequately justified the upward variance. *See United States v. Dougherty*, 754 F.3d 1353, 1362 (11th Cir. 2014). It properly considered the § 3553(a) factors and did not abuse its discretion by placing substantial weight on the seriousness of the offense and Forbes' history and characteristics, his lies during his testimony, and his lack of remorse. The court also considered the need to provide specific and general deterrence and to protect the public.

Not only that but the 168-month (14 years) sentence was well below the statutory maximum of 40 years, which is another indicator of its reasonableness. *See United States v. Riley*, 995 F.3d 1272, 1278 (11th Cir. 2021). The sentence is not substantively unreasonable.

D. The Description of the Conditions of Supervised Release

Finally, Forbes contends that the district court violated his due process rights because it imposed the *standard* discretionary conditions of supervised release without specifically describing what those conditions are. Forbes' presentence investigation report (PSR) referred to the availability of the conditions in the

Overview of Probation and Supervised Release Conditions document and provided the website address where it could be found. The PSR recommended, and the court required, that "any term of supervision be under the mandatory and standard conditions adopted for use" in the district and it also discussed the recommended *special* conditions. At the sentencing hearing, the court confirmed that Forbes had reviewed the PSR with his counsel.

When imposing the sentence, the court stated that "the standard and mandatory conditions" of supervised release would be required "as well as the specific conditions that are laid out" in the PSR. Forbes did not object or ask for any clarification about what those conditions are. The written judgment listed in detail the 13 standard conditions of supervised release.

Several mandatory conditions of supervised release are set out in 18 U.S.C. § 3583(d), and district courts are authorized to order additional conditions. *See* 18 U.S.C. § 3583(d). The United States Sentencing Guidelines allow other discretionary conditions and list the 13 standard conditions that are generally recommended, as well as several special conditions. *See* U.S.S.G. § 5D1.3(b)–(d). "[A] district court is not required to individually pronounce each discretionary condition of supervised release if at sentencing the court expressly incorporates a written list detailing those conditions." *United States v. Rodriguez*, 75 F.4th 1231, 1249 (11th Cir. 2023).

In our *Hayden* decision, we held that a district court's oral pronouncement of the "standard conditions" was sufficient when

the court "referenced the 13 discretionary standard conditions of supervised release" that had been adopted in that district. *United States v. Hayden*, 119 F.4th 832, 838–39 (11th Cir. 2024). The conditions imposed in the written judgment were listed in the publicly available judgment form and tracked the relevant sentencing guideline. *Id.* at 839. There was no "conflict" between the oral pronouncement and the written judgment, which "specifie[d] what the oral pronouncement had already declared." *Id.* Under those circumstances, due process requirements were satisfied. *See id.*; *see also United States v. Read*, 118 F.4th 1317, 1321–22 (11th Cir. 2024) (explaining that "[c]oncerns about due process arise when a sentence in the written judgment conflicts with the oral pronouncement" and holding that there was no conflict because the written judgment detailing the standard conditions adopted by the district "only expound[ed]" upon the oral pronouncement of the "standard conditions").

The district court did not err by failing to detail in its oral pronouncement of Forbes' sentence the standard discretionary conditions of his supervised release. The court referred to the conditions that were brought to Forbes' attention in the PSR before sentencing and were publicly available on the website that the PSR mentioned. In this case, as in *Hayden* and *Read*, there was no "conflict" between the oral pronouncement and the written judgment, which "specifie[d] what the oral pronouncement had already declared." *See Hayden*, 119 F.4th at 839; *see also Read*, 118 F.4th at 1322.

24-12126                Opinion of the Court                25

**AFFIRMED**.